CENTLIVRE BEVERAGE COMPANY *v.* ROSS.

[No. 10,548.   Filed November 19, 1919.]

1. MASTER AND SERVANT.—*Workmen's Compensation.*—*Permanent Disability.*—*Evidence.*—The last paragraph of §31 of the Workmen's Compensation Act covers only injuries that cause some permanent partial disability that effects some diminution of earning

power and, to sustain an award thereunder, there must be findings of such disability and diminution, and such findings must be supported by the evidence. p. 346.

2. MASTER AND SERVANT.—*Workmen's Compensation.—Industrial Board.—Findings.—Conclusiveness.*—The findings of the Industrial Board are conclusive upon the Appellate Court only when sustained by the evidence. p. 349.

3. MASTER AND SERVANT.—*Workmen's Compensation.—Loss of Testicle.—Functions and Earning Capacity Unimpaired.*—The loss of a testicle, unaccompanied by any impairment of any physical function, or by any disability to work, is not a permanent partial disability under the last paragraph of §31 of the Workmen's Compensation Act. p. 350.

From the Industrial Board of Indiana. Proceedings for compensation under the Workmen's Compensation Act by Sam J. Ross against the Centlivre Beverage Company. From an award for applicant, the defendant appeals. *Reversed.*

*J. W. Hutchinson,* for appellant.

McMAHAN, J.—The appellee filed his application with the Industrial Board, October 14, 1918, for the adjustment of his claim for compensation against the appellant under the Workmen's Compensation Act. Acts 1915 ,p. 392, §80201 *et seq.* Burns' Supp. 1918.

On review by the full board, a majority of its members found that: On and prior to February 1, 1917, appellee was employed by the appellant at an average weekly wage of $18.09; near quitting time on said date he received a personal injury by an accident arising out of and in the course of his ·said employment, of which the appellant had actual knowledge at the time; that at the time of his injury appellee was engaged in piling kegs upon an icy floor, when he slipped and strained himself; he finished his day's work, went home, and the injury caused him to go to bed; an orchitis developed from the injury involving the left

testicle; on Friday morning, February 2, 1917, the appellant was notified of the appellee's illness, but no doctor was called; on the following Monday morning the appellee returned to his work, but was unable to make a full hand; at said time he notified his foreman, and a physician was called by appellant on said date; following said date the appellee, as a result of his injury, was disabled for work intermittently until May 6, 1918, when it became necessary to enucleate the left testicle on account of the conditions resulting from the injury, and that said injury has produced such permanent partial impairment as entitles the plaintiff to 100 weeks' compensation.

In accordance with the above finding, appellee was awarded compensation for 100 weeks at the rate of $9.95 per week, beginning May 6, 1918.

The only error assigned is that the award is contrary to law. This award must be sustained, if at all, under §31 of the Workmen's Compensation Act, *supra*. Clauses (a) to (i) in this section provide arbitrarily that for certain injuries there shall be awarded compensation for a certain period definitely fixed. The last paragraph of the section provides for cases of permanent partial disability, other than those mentioned in clauses (a) to (i), the language being: "In all other cases of permanent partial disability, including any disfigurement which may impair the future usefulness or opportunities of the injured employe, compensation in lieu of all other compensation shall be paid when and in the amount determined by the Industrial Board, not to exceed fifty-five per cent. of the average weekly wages per week for a period of two hundred weeks."

As said by this court in *In re Denton* (1917), 65 Ind.

App. 426, 117 N. E. 520, 523:. "This section deals with such injuries not from the standpoint of any total disability that may result temporarily or any disability that may continue through the period fixed by the section, but from the standpoint of the consequent permanent disability, and resulting diminution in earning power extending through life.. The specific portions of the section assume that from the respective scheduled injuries a handicap of a certain gravity will result, for which compensation is arbitrarily fixed, regardless of the actual disability and loss of capacity. Where a workman suffers an injury covered by §31, he is entitled to the compensation fixed by that section, not because of the actual extent of the resulting disability, but because the section so declares."

The injury which appellee suffered is not one of the specific injuries provided for in subdivisions (a) to (i) of §31, *supra.* The last paragraph of said section, heretofore quoted, dealing as it does ·with injuries coming within its terms from the standpoint of permanent disability. and resulting diminution of earning power, and the legislature not having specifically provided for said injury, the fact of disability and the resulting diminution of earning power must be found as a matter of fact, and that finding must be sustained by the evidence in order to sustain an award.

The appellant insists that there is no evidence that the injury in question resulted in any permanent disability to work, or for work, or in any impairment of the future usefulness of .appellee. The cases covered by §31, *supra,* are expressly stated to be cases of "permanent partial disability, including any disfig-

urement which may impair the future usefulness of the injured employe.''

We must keep in mind the fact that the act does not give compensation for loss of a member, such as the loss of a limb, but for the loss of earning capacity actually caused by the loss of the limb. ''The loss of his capacity to earn, * * * is the basis upon which his compensation should be based.'' *Gillen's Case* v. *Ocean, etc., Corp.* (1913), 215 Mass. 96, 102 N. E. 346, L. R. A. 1916A 371: ''The theory of the New York law is not indemnity for loss of a member or physical impairment as such, but compensation for disability to work * * *.'' *Matter of Marhoffer* v. *Marhoffer* (1917), 220 N. Y. 543, 116 N. E. 379. ''Compensation is not allowed for pain and discomfort following an injury, but wholly for disability to labor.'' *Kid* v. *New York, etc., Co.*, 1 Cal. I. A. C. Dec. 475.

The Supreme Court of Nebraska, in *Epsten* v. *Hancock-Epsten Co.* (1917), 101 Neb. 442, 163 N. W. 767, in speaking of the Nebraska Workmen's Compensation Act, said: ''The statute conclusively presumes that for the loss of, or the permanent loss of the use of, a hand, arm, foot, leg, or eye, the proper compensation is 50 per cent. of the wages for a specified number of weeks, respectively. For any other partial disability, compensation is to be determined by *proof of impairment of earning power.* (Our italics.) If an employe after the injury receives the same or higher wages than before, ordinarily that would indicate that his earning power had not been impaired.''

The Supreme Court of Massachusetts in speaking of the general purpose of the Workmen's Compensa-

tion Act in *Duart* v. *Simmons* (1918), 231 Mass. 313, 121 N. E. 10, said: "The general purpose of the act was to substitute, in cases to which it is applicable, for common-law or statutory rights of action and grounds of liability, a system of money payments based upon the loss of wages by way of relief for workers receiving injury in the course of and arising out of their employment.   *   *   *   All payments are by way of financial relief for inability to earn wages, or for deprivation of support flowing from wages theretofore received.   The word 'compensation' in the connection in which it is used in the act, means the money relief afforded according to the scale established and for the persons designated by the act, and not the compensatory damages recoverable in an action at law for a wrong done or contract broken."

The Supreme Court of Rhode Island in *Weber* v. *American Silk Spinning Co.* (1915), 38 R. I. 309, 95 Atl. 603, Ann. Cas. 1917E 153, in construing the Workmen's Compensation Act of that state said: It "is only intended to furnish compensation for loss of earning capacity. Without such loss there is no provision for compensation in the section, although even permanent physical injury may have been suffered, and the burden is upon a petitioner to show this loss and, with reasonable definiteness, its amount.   *   *   *; and, if it be suggested that the offer of the respondent to re-employ him at the former rate of wages did not necessarily imply permanency of employment, the fact still remains that the petitioner has presented no evidence showing loss of earning capacity or which would enable a court to make

an award of compensation for partial incapacity * * * ."

That compensation must be based upon a diminution of earning power was clearly recognized by this court in the Denton case, *supra,* wherein it was held that §31, *supra,* dealt with injuries from the "standpoint of the consequent *permanent disability and resulting diminution in earning power* extending through life. (Our italics.)

The Industrial Board's findings of fact are conclusive on this court only when sustained by the evidence. It therefore becomes our duty to determine whether there is any evidence to support the finding that the injury to appellee "produced such permanent partial impairment" as entitled him to the compensation awarded.

The evidence shows without any conflict that the appellee worked for appellant three or four years, during which time he washed and piled up beer kegs. About 4 p. m. on Thursday, February 1, 1917, while engaged in said work, he slipped and strained himself. He continued trying to work until quitting time, an hour later, when he went home and went to bed. He did not work any more until the following Monday, when he went back to work, and worked continuously thereafter until about May 1, 1918. His weekly wage at the time of his injury was $19. His average weekly wage for the previous year was $18.09. On Monday after the accident he was examined by Dr. Cruse, a physician furnished by appellant. At the time of this examination the inguinal region and both testicles were swollen. He was at that time suffering from orchitis. Dr. Cruse gave him a prescription for medicine, which was filled

twice.   On May 4, 1918, appellee went to see a physician of his own selection, who informed him that he had varicocele, and that it would be necessary to remove one of his testicles.   On May 6, 1918, the left testicle was removed.   Appellee lost six weeks from work at the time of the operation, after which he returned to his work with appellant, and continued to work for appellant as long as it had any need for his service.   Appellant discharged appellee early in October, 1918, not because of any disability on his part, but for the reason that appellant had no further need for his services.   The appellee's wages were increased from time to time, so that in May, 1918, his weekly wage was $23.   From and after August 3, 1918, he was paid $24.50 per week.   After he ceased to work for appellant he secured work at the Oil and Pump Works.   At the time he filed his application for compensation with the Industrial Board, he was able to earn $24.50 per week.

There was no evidence that the removal of the particular organ mentioned had or would in the slightest degree impair the future usefulness or opportunity of appellee, or that it had or would produce any disability for work, or to work, or a loss of any physical function.   Notwithstanding the injury and operation, his earning capacity and every physical function remained unimpaired.

There was no evidence of a permanent partial disability.   The award of the board is reversed, with directions to modify its findings and award in accordance with this opinion.