## RUNION *v.* INDIANA GLASS COMPANY.

[No. 16,000. Filed October 22, 1938.]

*James J. Moran, M. V. Skinner* and *Wheeler Ashcraft,* for appellant.

*Bracken, Gray & De Furr* and *F. S. Caldwell,* for appellee.

CURTIS, P. J.—The appellant brought his action in the trial court for damages on account of personal injuries. The complaint was in two paragraphs, to each of which a demurrer was addressed for want of facts

sufficient to constitute a cause of action. The court sustained each demurrer. The appellant refused to plead further, electing to abide by the rulings on the demurrers, whereupon the court rendered judgment against him that he take nothing by his complaint and that the appellee recover its costs.

It is from the above judgment that this appeal is prosecuted. The errors assigned and relied upon for reversal are alleged error in the ruling on each of said demurrers. From an examination of the two paragraphs of the complaint it would appear that the complaint proceeds upon the doctrine of common law negligence supplemented by the Employer's Liability Act of 1911. The main point made by the demurrers is that the complaint shows upon its face that the cause of action falls within the Indiana Workmen's Compensation Act and that therefore the Industrial Board of Indiana had exclusive jurisdiction of the cause of action. We do not believe it necessary to set out the demurrers verbatim nor is it necessary to set out each paragraph of the complaint. If the cause of action falls within the provisions of the Indiana Workmen's Compensation Act then the ruling of the trial court on each of the demurrers was correct and the judgment should be affirmed. We set out enough of the first paragraph of the complaint for an understanding of the question involved as follows:

"That the defendant is now and has been for many years last past, a corporation engaged in the general business of manufacturing glass at the City of Dunkirk, Jay County, Indiana, and that for many years prior to July 15th, 1933, the defendant has had in its employ one Freeman Miller as Assistant General Manager and Superintendent of its said business, as conducted and carried on by it in the construction and manufacture of said goods; that during all of said time the said Freeman Miller, as a part of his duties and services for the said defendant corporation, had the control, management and direction of all the laborers and employees of the defendant,

who were working in and about said defendant's factory and business; that the said Freeman Miller managed, directed and controlled the said business of the said defendant in said defendant's factory and in the manufacturing of said glass, and was on July 15, 1933, in the absence of the General Manager, one Frank Batch, acting as Manager and Superintendent of said factory, and that all of defendant's employees in the said factory were under the control and subject to the orders of the said Freeman Miller on said day, and were each and all bound to, conform to and ordered to obey, and did conform to and obey the said Freeman Miller as such Manager and Superintendent.

"That as a part of the duties and directions given by the Manager and as a part of the employment, the said company and defendant herein had its plant equipped with a whistle, and on the blowing of a certain signal, which was known as an emergency or fire signal, all employees and laborers in said factory were required at once to report at the factory for whatever duties or orders the said Freeman Miller, as Manager, Superintendent and Foreman, desired to give. All of which was a part of the employment of each laborer in said defendant's factory.

"Plaintiff avers that for ———— months prior to July 15, 1933, this plaintiff was in the service and employment of said defendant, and that during all of said time he did the work and services of a laborer in said factory, and that during all of said time, while he was in the service of said defendant, his work, his position, his duties were in said portion of defendant's said factory and business so under the control of the said Freeman Miller; that during all of said time, this plaintiff was by directions of the defendant corporation, under the control and supervision and was subject to the orders and authority of the said Freeman Miller, and that during all of said time he had as such employee followed and obeyed the instructions and directions of the said Freeman Miller.

"Plaintiff further avers that on July 15, 1933, and while so in the employ and service of said defendant and after he had returned to his home from his labors, at about the hour of 6:30 o'clock P. M. on said July 15, 1933, the said corporation directed

the signal heretofore described and known as the emergency or fire signal to be given, which was as before stated an order and direction for all employees and laborers to report immediately to the plant and factory of said defendant, and which order and which act of reporting to the plant for service was a part of the duties of this plaintiff and was in the line of his duties of an employee of the defendant corporation, and that this plaintiff following such orders and directions as were understood by the sounding of said whistle, did at said time report to the said Freeman Miller, as such foreman, to assist him and to do all things as ordered and directed by the said Freeman Miller and that certain others of the employees and servants of the defendant, all of whom were then and there under control and subject to the direction of the said Freeman Miller and all of whom, including this plaintiff, were bound to obey the orders and directions of the said Freeman Miller, to do and perform whatever duties were assigned them, and then and there perform and do whatever was stated, ordered and directed by the said Freeman Miller. That one of the glass tanks, which were used in the heating of the sand and other ingredients necessary in the manufacturing of glass, had sprung a leak and that the hot, molten glass was then and there running from said tank, that the said Freeman Miller, then and there acting as Manager, Superintendent and Foreman, ordered and directed this plaintiff to connect the water hose and to turn on the water from a water connection, which was then and there attached and a part of the water supply of said factory, and that said Freeman Miller did then and there direct this plaintiff to climb up the building on what is known as a batch cart and connect the said hose and to turn on the water, which this plaintiff did, acting at said time under the orders and directions of the said Freeman Miller. That then and there following the directions and orders of the said Freeman Miller, he came down from the position in which he had attached the hose and was standing about fifteen feet from said glass tank, at the side of the said Freeman Miller, waiting for the next order and direction that the said Freeman Miller was about to give. That the said Freeman Miller then

and there carelessly and negligently directed one Charles Leport, who had a hold of the nozzle of the said hose, which this plaintiff had attached to turn the water on the hot and molten glass, which was pouring from the furnace and tank as aforesaid. That the said Freeman Miller carelessly and negligently failed to give any warning of any danger and he then and there well knew that this plaintiff was standing at about fifteen feet from the said glass tank. That the said water on striking the glass tank caused an explosion and that hot steam arose and filled that portion of the defendant's factory, which hot steam enveloped and burned and injured this plaintiff. That this plaintiff, while so engaged in said work, and while in the exercise of due care and precaution, and without fault and negligence on the part of this plaintiff and without any knowledge of the danger that said defendant, through its Manager, Superintendent and Foreman, was placing this plaintiff, but by reason of the negligence of the said Freeman Miller, while so directing and controlling the said work, and the said servants in throwing water upon the said molten glass and was the sole and proximate cause of this plaintiff's being burned and injured by said steam."

Here follows a detailed description of the particular injuries sustained which were of a shocking nature, but which we need not set forth. We quote the next allegation as follows: "That all of said injuries were caused by the negligent acts of the defendant as aforesaid and that plaintiff is permanently injured and that he has sustained great suffering and pain and inconvenience by means of such injury and will continue to suffer such pain and injury permanently." The prayer is for a judgment for damages.

We need not set out the second paragraph of the complaint for the reason that insofar as the ruling on the demurrer to it is concerned, it presents the same legal question that is presented by the ruling on the demurrer to the first paragraph of complaint.

We think the trial court's ruling on each of these de-

murrers is correct. The appellant relies principally upon five cases, to-wit: *General Printing Corporation* v. *Umback* (1935), 100 Ind. App. 285, 195 N. E. 281; *Centlivre Beverage Company* v. *Ross* (1919), 71 Ind. App. 343, 125 N. E. 220; *Pobutkiewicz* v. *General American Manufacturing Company* (1921), 77 Ind. App. 704, 132 N. E. 748, 133 N. E. 526, 885; *Jones* v. *Princeton Coal Company* (1926), 85 Ind. App. 468, 139 N. E. 202, 140 N. E. 438, and *Standard Steel Car Company* v. *Martiecz* (1918), 66 Ind. App. 672, 114 N. E. 94.

These cases are readily distinguishable from the instant case. It appears to us that the General Printing Corporation case is an authority directly against the appellant's contention. We quote from that case as follows (p. 298) : "We therefore conclude, as found by the jury, that the disease and death ensuing therefrom of appellee's decedent, as set out and described in the third paragraph of complaint was not a disease resulting from injury caused by accident, bringing it within the provisions of the Workmen's Compensation Act, and that the appellee properly brought her action in the courts of law, to redress whatever wrongs she may have suffered as a proximate result of appellant's negligence, for which she was entitled to relief."

The complaint in the instant case proceeds squarely upon the theory that the injury complained of was the result of an accident arising out of and in the course of the employment of appellant by the appellee. We recognize the distinctions made in the General Printing Corporation case, but we fail to see how the complaint herein brings the instant case within that case. The language of the complaint is clear and unmistakable to the effect that the injury in the instant case arose out of and in the course of the employment and we think that the Indiana Workmen's Compensation Act conclusively binds the parties in the

instant case. There was no allegation whatever made or attempted to be made that there had ever been any election or notice upon the part of either the employer or the employee not to be bound by the Indiana Workmen's Compensation Act. We feel it unnecessary to point out in detail the distinction between the instant case and the other cases relied upon by the appellant for the reason that basically the same distinction exists as to all of said cases. The appellant, due to the fact that no diminution of earning power is pleaded, seems to be confused by his failure to distinguish between the terms "disability" and "impairment" as used in the Indiana Workmen's Compensation Act. These distinctions have been made clear recently by this court in *Sumpter* v. *Colvin* (1934), 98 Ind. App. 453, 190 N. E. 66, and in *Pettiford* v. *United Department Stores* (1935), 100 Ind. App. 471, 196 N. E. 342, and we do not believe it necessary herein to restate them further than to call attention again to the fact that the term "disability" as used in the Act means inability, either partial or total, to work while the term "impairment" means the partial or total loss of the function of a member or members of the body or of the body as a whole. See: *Sumpter* v. *Colvin*, *supra*.

In our opinion the facts alleged in each paragraph of the complaint bring the case squarely within the provisions of the Indiana Workmen's Compensation Act. The rulings of the trial court on the demurrers are therefore correct. Judgment affirmed.