J. M. BRANHAM, Employee, v. DENNY ROLL & PANEL COMPANY, Employer, AMERICAN MOTORISTS INSURANCE COMPANY, Carrier.

(Filed 2 June, 1943.)

**1. Master and Servant §§ 37, 40a—**

The general purpose of the Workmen's Compensation Act, in respect to compensation for disability, is to substitute, for common law or statutory rights of action and grounds of liability, a system of money payments by way of financial relief for loss of capacity to earn wages. There is no compensation provided for physical pain or discomfort.

**2. Master and Servant § 40a—**

Disability, under the Workmen's Compensation Act, is measured by the capacity or incapacity of the employee to earn the wages he was receiving

at the time of the injury, by the same or any other employment. And the fact that the same wages are paid by the employer, because of long service, does not alter the rule.

**3. Master and Servant § 53a—**

Where the Industrial Commission finds a general partial disability, in adjudging the rights and liabilities of the parties, the Commission may direct compensation at the statutory rate, whenever it is shown, within 300 weeks of the accident, that claimant is earning less than his former wages, due to the injury. By so doing the Commission retains jurisdiction for future adjustments and does not exceed its authority.

**4. Master and Servant § 40a—**

Compensation for disfigurement is not required by the Act. Its allowance or disallowance is within the legal discretion of the Industrial Commission.

**5. Same—**

Disfigurement, under the Workmen's Compensation Act, must be evidenced by an outward observable blemish, scar or mutilation, and it must be so permanent and serious as to hamper or handicap the person in his earning or in securing employment.

APPEAL by plaintiff from *Grady, Emergency Judge,* at November Term, 1942, of GUILFORD. Modified and affirmed.

Claim for compensation for general partial disability under the Workmen's Compensation Act. The plaintiff, an employee of defendant Denny Roll & Panel Company, on 26 April, 1940, suffered an injury arising out of and in the course of his employment. While assisting in loading a box car he started to get out the door. His foot slipped and he fell to the ground. As a result he suffered a contusion over the lumbar spine. He is now suffering a 33⅓%, or more, general partial disability in the loss of the use of his back. This loss of use of his back is due to an old compressed fracture of the twelfth dorsal vertebra which "is probably due to this old fractured spine which probably occurred at the time of the injury." In all probability he will never again be able to do heavy manual labor.

At the time of and prior to his injury claimant was in charge of the machine room and of loading and unloading cars and trucks, acting in a supervisory capacity, "to keep things moving." He would "pinch-hit" if a man was off his machine or in the event other physical assistance was needed. He returned to his job within seven days (the waiting period under section 28 of the Act) after his injury. As he was not able to do the physical work he had theretofore done his employer hired another man and assigned some of the duties of the superintendent to claimant. He is earning the same wage and has lost no compensable time from his work. All medical bills except those of Duke Hospital

and for dental services have been paid by the employer or insurance carrier.

The commission found:

"1. That the claimant, J. M. Branham, has a 33⅓% or more general partial disability under Section 30 and that he has been tendered and has accepted employment suitable to his capacity as provided for in Section 32; and that Branham is entitled to compensation under Section 30 for 300 weeks from the date of the accident, April 26th, 1940, less such time that he has been paid full wages.

"2. That Branham has been and is being paid full wages in lieu of compensation by his employer; that Branham has lost not more than seven days (the waiting period, Section 28) from his work due to said injury by accident."

It thereupon ordered that the defendants pay to the proper parties "the reasonable medical, surgical and hospital costs of treatments rendered the claimant at Duke Hospital and for payment of dental bills incurred as a result of his injury by accident, after bills have been submitted to and approved by the Commission."

It further ordered that an award issue "providing that the defendants pay the claimant compensation at the rate of 60% of the difference between the wage he was earning before the accident and the wage that he is able to earn thereafter any time it is shown that the claimant is earning less due to his injury by accident within 300 weeks from the date of the accident." The claimant appealed to the Superior Court and when the cause came on to be heard in the court below the judge, being of the opinion that the full commission was in error in directing the award as above quoted and being further of the opinion that no award for compensation can be made at this time in view of the facts submitted, ordered the said award stricken and remanded the cause to the full commission "to the end that it proceed in accordance with the law as laid down by the court." The plaintiff excepted and appealed.

*James B. Lovelace, Smith, Wharton & Jordan and George M. Chapman for plaintiff, appellant.*

*Ruark & Ruark for defendants, appellees.*

BARNHILL, J. The Workmen's Compensation Act, Ch. 120, P. L., 1929, as amended (Michie's N. C. Code of 1939, Ch. 133 [a]), provides primarily for four several types of compensation to be paid to employees covered by the Act for injuries arising out of and in the course of their employment. They are:

1. Compensation for disability, dependent as to amount upon whether the injury produces a permanent total, a permanent partial, a total temporary or a partial temporary incapacity. Sec. 29 and 30.

2. Compensation in stipulated amounts for loss of some part of the body such as a finger or toe, a leg or arm.   Sec. 31.

3. Compensation for death.   Sec. 29.

4. Compensation for bodily disfigurement.   Sec. 31.

The claim here made comes within the first class embracing injuries which produce a permanent partial incapacity.   The compensation is to be computed upon the basis of the difference in the average weekly earnings before the injury and the average weekly wages *he is able to earn* thereafter.   Sec. 30.

The general purpose of the Act, in respect to the first class, is to substitute, in cases to which it is applicable, for common-law or statutory rights of action and grounds of liability a system of money payments based upon the actual loss of wages by way of relief for workers for injuries received in the course of and arising out of their employment. *Duart v. Simmons,* 231 Mass., 313, 121 N. E., 10; *Centlivre. Beverage Co. v. Ross,* 125 N. E., 220.   To guard against the possibility that an injured employee may refuse to work when, in fact, he is able to work and earn wages, and thus increase or attempt to increase the amount of his compensation, the benefits of the Act are denied to him so long as he refuses, without justification, to accept employment procured for him suitable to his capacity.   Sec. 32.

All payments are by way of financial relief for inability to earn wages, or for deprivation of support from wages theretofore received. "Compensation," in the connection in which it is used in the Act, means a money relief afforded according to the scale established and for the persons designated in the Act.   *Duart v. Simmons, supra; Centlivre Beverage Co. v. Ross, supra.*

The statute provides no compensation for physical pain or discomfort. It is limited to the loss of ability to earn.   "The loss of his capacity to earn . . . is the basis upon which his compensation must be based."   Sec. 30.   *Gillen v. Ocean, Etc. Corp.,* 215 Mass., 96, 102 N. E., 346, L. R. A., 1916 A, 371; *Centlivre Beverage Co. v. Ross, supra.*   It is only intended to furnish compensation for loss of earning capacity.   Without such loss there is no provision for compensation in Section 30, although even permanent physical injury may have been suffered.   *Weber v. American Etc. Co.,* 95 Atl., 603, Ann. cases 1917 E., 153.

What, then, is the meaning of "disability" as used in the statute?   It is defined in the Act: "The term 'disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment."   Sec. 2 (i).

The disability because of the injury is to be measured by the capacity or incapacity of the employee to earn the wages he was receiving at the time of the injury.   It is not his inability to do the identical kind or

type of work as theretofore. That is to say, the right to compensation is not dependent upon the inability to do substantially the same work as before the injury. It is confined to the loss of ability to earn *in the same or any other employment*. *Smith v. Swift & Co.*, 212 N. C., 608, 194 S. E., 106.

In short, under our Act, wages earned, or the capacity to earn wages, is the test of earning capacity, or, to state it differently, the diminution of the power or capacity to earn is the measure of compensability.

It follows that, as the claimant is now earning wáges in an amount equal to those received by him prior to his injury, he has failed to show any compensable injury or incapacity.

However urgently he may insist that he is "not able to earn" his wages, the fact remains that he is receiving now the same wages he earned before his injury. That fact cannot be overcome by any amount of argument. It stands as an unassailable answer to any suggestion that he has suffered any loss of wages within the meaning of the Act.

The contention of the appellant that *Smith v. Swift & Co., supra,* is distinguishable in that in that case the employee secured employment from another employer cannot be sustained. The statute, sec. 2 (i), is clear. There is no "disability" if the employee is receiving the same wages in the same or any other employment. That "in the same" employment he is not required to perform all the physical work theretofore required of him can make no difference. Even so, if this be not "the same employment" then it clearly comes within the term "other employment." To remove the employment from one classification necessarily shifts it to the other. Furthermore, there is no language used in this section or in any other part of the statute which even suggests that "other employment" must be with a different employer.

But the appellant contends that he is not now earning his wages; that they are paid to him "because of his long service and the sympathetic attitude of his employer." Hence, he says, he is not now "able to earn" and is not earning any wage. Conceded, *arguendo,* the final result is the same. While the employer here, as is ordinarily the case, has an insurance carrier standing by under contract to pay whatever it is called upon to pay, it is the one primarily liable. It is paying and the employee is receiving more than the assessable ·amount of compensation. What boots it whether the "wages" received by him are paid for services rendered or as compensation for the injury received? In either event, under the express terms of the Act, he cannot recover additional compensation.

Decisions of other jurisdictions on the question here presented are by no means uniform. This lack of accord is due, in very large measure, to the difference in the phraseology of the statutes under consideration

in defining disability and in prescribing the standards or tests of compensability.

Hence, it is needless for us to undertake to analyze and differentiate the several cases cited and relied on by appellant. Suffice it to say that no decision dealing with identical language in which a different conclusion was reached has been called to our attention. See, however, Anno. 17 A. L. R., 205, and Anno. 118 A. L. R., 731.

To protect the employee against the possibility that the employer might, after the expiration of 12 months, sec. 24, discontinue the employment and thus defeat the rights of the employee, the commission, after finding the existence of the disability, directed that an award issue subject to specified limitations. The court below entered judgment striking this provision and affirming the judgment of the commission as thus modified. The exception to the judgment challenges the correctness of this ruling. It must be held for error.

The commission adjudged the rights and liabilities of the parties. It then directed compensation at the statutory rate "at any time it is shown that the claimant is earning less," etc., during the statutory period of 300 weeks. By this order the commission, in effect, retained jurisdiction for future adjustments. In so doing it did not exceed its authority.

*Thigpen v. Ins. Co.,* 204 N. C., 551, 168 S. E., 845, cited and relied upon by the court below involved a claim under the permanent disability clause of an insurance policy. It is not controlling here.

The claimant likewise contends that the court below erred in overruling his exception to the refusal of the Industrial Commission to allow compensation for disfigurement. Such compensation is not required by the Act. Its allowance or disallowance is within the legal discretion of the commission. Sec. 31. See, also, Ch. 164, P. L., 1931. Furthermore, it is not made to appear that claimant had sustained a disfigurement within this provision of the statute.

To disfigure means to mar, to deface, to render less beautiful, as to disfigure the landscape with billboards. Webster's New International Dictionary. A disfigurement, then, is a blemish, a blot, a scar or a mutilation that is external and observable, marring the appearance.

The terms "facial," "head," "bodily" and "member or organ," are used in connection with the term disfigurement. They are limited by the manner of their use and must be so construed. Being so construed "any member or organ" includes only those parts of the body which are subject to disfigurement. There must be an outward observable blemish, scar or mutilation which tends to mar the appearance of the body, and, under the express terms of the Act, it must be serious. For instance, a puncture of the ear drum or the removal of a kidney would result in injury, perhaps serious, and yet no disfigurement would result.

This view is justified by recent amendments to this section. See H. B. 272, General Session Laws of 1943, C. 502.

Apparently this is the construction the commission has adopted and consistently followed. "To warrant compensation for disfigurement it must be so permanent and serious that it, in some manner, hampers or handicaps the person in his earning or in securing employment, or it must be such as to make the person repulsive to other people." *Poston v. Amer. Enka Corp.*, 1 I. C., 53. See other decisions cited in 4 Schneider, Workmen's Compensation Statutes, 2829.

The conclusions and award of the Industrial Commission should be affirmed without qualification. Judgment must be entered accordingly.

Modified and affirmed.