## SCOTT v. ALASKA INDUSTRIAL BOARD et al.

### No. 6242–A.

United States District Court
D. Alaska. First Division Juneau.
April 3, 1950.

Supplemental Opinion July 5, 1950.

Faulkner, Banfield & Boochever, Juneau, for plaintiff.

William L. Paul, Jr., Juneau, for defendant Erickson.

J. Gerald Williams, Atty. Gen. of Alaska, for defendant Alaska Ind. Board.

FOLTA, District Judge.

On May 8, 1948, the defendant Erickson, while employed as a blacksmith in plaintiff's mine in Alaska, contracted pneumonia which, in conjunction with silicosis in an advanced stage, culminated in total permanent disability from that disease. On December 22, 1949, the Industrial Board awarded Erickson $6000 compensation for total, permanent disability. The record discloses that Erickson has been employed in

mining since 1906, with the exception of several years in construction work. It is conceded that his disability is due to silicosis.

Plaintiff's attack on the award is based on several grounds, but it is unnecessary to notice all of them in view of the conclusion reached.

The uncontradicted evidence on behalf of Erickson is that, except for about 8 years, he had worked in mines since 1906; that between 1940 and the date of his disability he worked approximately 30 months underground in plaintiff's mine in Alaska, in which there was considerable quartz— a potent source of silicate.

While these facts might suffice to support the finding of a causal relation between the employment and the injury, the plaintiff's evidence, also uncontradicted, is that the mine was wet and the drilling machinery modern in the sense that it is of the type in which a stream of water is fed through the drills to allay the dust from drilling.

■ The Board found that Erickson was, during his employment in Alaska and California by plaintiff subjected to "such exposure as would contribute to his silicosis and eventual disability". Manifestly, exposure to anything except dust would be irrelevant. However, the record is wholly barren of any evidence that dust conditions prevailed in the mine in Alaska or that Erickson was exposed to such conditions in the course of his employment there. Not only is there a total absence of proof on this vital point, but the matter is one that is within the knowledge of Erickson. His failure to produce any evidence thereon, however, even though justifying the presumption that if produced it would have been unfavorable, does not relieve the Board of adducing sufficient evidence to support its finding.

The case is therefore remanded to the Board with directions to take further evidence on this point and submit it to this Court by May first next, together with its finding.

### Supplemental Opinion

■ On April 3, 1950, this Court disposed of the appeal in this case by way of remand to the Alaska Industrial Board for the purpose of affording it an opportunity to take testimony in support of its finding that the defendant had been subjected to "such exposure as would contribute to a silicosis and eventual disability". The record was barren of any evidence on this point and it appeared to the Court that, since exposure or nonexposure was a matter obviously within the knowledge of the defendant, it must have been an oversight on the part of the Board to fail to adduce testimony thereon. I now find that the testimony so adduced after remand is sufficient to support the finding referred to.

The only remaining question is whether contribution may be had from the second injury fund under the provisions of subdivision 12 of Section 43-3-1, A.C.L.A.1949, which provides as follows: "[*Injury causing total permanent disability when combined with previous disability.*] In those cases where an employee receives an injury arising out of and in the course of his or her employment which, if itself, would cause only permanent partial disability but which, combined with a previous disability or injury, does in fact cause permanent total disability, the employer shall only be liable for the permanent partial disability caused by the subsequent injury; provided, however, that in addition to compensation for such permanent partial disability and after the cessation of the payments for the amounts prescribed therefor, the injured employee shall be paid the remainder of the compensation that would be due for permanent total disability out of the second injury fund hereinbefore created and provided."

■■ It will be noted that contribution is required where "prior disability or injury" was a contributing cause of the final compensable loss. The plaintiff claims that the quoted provision comprehends a prior disease, although unmanifested as in the instant case. The immediate question, therefore, is whether the presence of the word "disability" has the effect of broadening the coverage of the statute sufficiently to include a case like the present. The terms "disability" and "incapacity" as used in workmen's compensation statutes, appear to be regarded as synonymous. The former

_{203}$ 203

ordinarily means loss or impairment of earning power. Michigan Quartz Silica Co. v. Industrial Commission, 214 Wis. 492, 253 N.W. 167; Savich v. Industrial Commission, 39 Ariz. 266, 5 P.2d 779; Marhoffer v. Marhoffer, 220 N.Y. 543, 116 N.E. 379; Runion v. Indiana Glass Co., 105 Ind. App. 650, 16 N.E.2d 961. Disability has also been defined as "actual physical incapacity to work at all, or * * * to work more than a part of the time". Montello Granite Co. v. Industrial Commission, 227 Wis. 170, 278 N.W. 391, 399. In Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 1025, 93 L.Ed. 1282, it was held that "the afflicted employee can be held to be 'injured' only when the accumulated effects of the deleterious substance manifest themselves". It would seem to follow, therefore, that if the time of disability is that of the earliest incapacity to work, there could manifestly be no "prior disability" previously thereto and that, therefore the case would not be one for which contribution could be had from the second injury fund. Accordingly, it would seem that the term "prior disability or injury" in the statute does not necessarily mean a prior compensable disability or injury but does require a manifestation of such condition.

The plaintiff urges a liberal construction of the second injury fund provision for the purpose of bringing within its purview cases like that at bar and cites in support thereof Lawson v. Suwanee Fruit & Steamship Co., 336 U.S. 198, 69 S.Ct. 503, 93 L.Ed. 611. But since the injury there dealt with was the prior loss of an eye which not only obviously manifested itself but also certainly resulted in incapacity, it is not perceived how any support can be derived from that case for plaintiff's position. It is significant that the Supreme Court agreed with the views of Chief Justice Groner as expressed in his dissent in National Homeopathic Hospital Ass'n v. Britton, 79 U.S.App.D.C. 309, 147 F.2d 561, 566, in the following language: "Weakness, whether pathological or traumatic, which does not become manifest until a subsequent accident, is not ordinarily thought of as prior disability under any provision of the Act. And this generally accepted view is borne out by the

great volume of decisions holding that a subjective ailment, as a diseased heart, a diseased kidney, or a congenital deformity * * * does not relieve the employer from the obligation of total indemnity".

It would, therefore, appear that on the contrary the case cited supports the view that the term "prior disability", as used in second injury provisions, is not to be construed as including prior unmanifested disability. Nor is this view inconsistent with the social aim of such statutory provisions to encourage the hiring of the partially disabled, for obviously where the prior condition does not manifest itself, no ground for discrimination in hiring would exist. Moreover, it cannot be assumed that it was the legislative intent to encourage or require further exposure to silicate.

The Connecticut cases cited by plaintiff arose under a statute which differs radically from ours and, hence, the cases are readily distinguishable on that ground. Plaintiff also cites the Kentucky cases of Fannin v. American Rolling Mill Co., 284 Ky. 188, 144 S.W.2d 228 and American Rolling Mill Co. v. Stevens, 290 Ky. 16, 160 S.W.2d 355, 145 A.L.R. 1256, in support of the proposition that apportionment is required even under a statute employing the term "previously injured employee" where there is an unmanifested disease. An examination of these decisions discloses that the former deals with a prior heart condition and the latter with a pre-existing arthritic condition. Although some weight may be accorded the second case cited despite the fact that there was a Board finding of prior loss of working time and thus a manifestation of disease conforming to the definition of "disability", what the Court said on this point in the case first cited is but obiter dictum (the point actually decided being that there was no causal connection between injury and employment). However, it should be noted that the Kentucky decisions were in conflict with the majority rule. It should also be pointed out that by an amendment to the Kentucky compensation statute in 1948, the legislature expressly adopted the majority rule. It is there provided in regard to subsequent injury fund apportionments, Section 342.120 which

204

succeeds former Section 4901, that "the term 'permanent partial disability' under the provisions of this section shall not include disease or pre-existing disease, except where the disease or pre-existing disease was the natural and direct result of a compensable injury * * *".

 I am of the opinion that the second injury fund provision applies only to a disease which resulted in some disability prior to the compensable injury and that the compensable loss which is the subject of the present action is not a proper subject of contribution from the second injury fund.