When an employee holds two separate jobs and is injured in one of them, the compensation rate may not be based on his aggregate compensation from both employments, but must relate only to the wages earned in the job producing the injury. Barnhardt v.Yellow Cab Company, Inc., 266 N.C. 419, 429, 146 S.E.2d 479
(1966). On the unusual facts in this case, the same principle applies to plaintiff's benefit. After being disabled in his physically demanding job, plaintiff was able to continue in a relatively sedentary, off-hours position as manager of a fraternal organization for some 18 months, with the assistance of his wife. (He also had some passive rental income, and probably some net gain from his hobby breeding dogs.) The Act compensates for the "incapacity because of injury to earn the wages which the employee was receiving at the time of the injury," and while, unfortunately, the parties were distracted somewhat from plaintiff's condition, the preponderance of the evidence indicates that he was physically incapable of replacing the wages lost due to the compensable injury during the period covered by the evidence. N.C.G.S. § 97-2(9). Had he been capable of accepting the job defendants offered — even if the hours conflicted with his other employment — or had he failed to make a reasonable job search when capable of working, his benefits should have terminated because the employer in whose job he was injured was not an insurer of claimant's income from other sources. See Barnhardt at 427; Branham v. Denny Roll Panel Co., 223 N.C. 233, 237,25 S.E.2d 865 (1943); N.C.G.S. § 97-32. While it is tempting to characterize the wage replacement benefit due under these circumstances as "temporary partial disability" because of common usage of these terms, under the Act this phrase is the term of art for benefit due at the end of the healing period when the employee has resumed gainful employment and is partially replacing the insured wages lost due to the compensable injury. N.C.G.S. § 97-30.
While not applicable in this award, the Commission's jurisdiction to ameliorate overpayments of compensation was a major issue in this case. The Commission does not have jurisdiction to order claimant to repay an unjustly obtained or mistakenly paid benefit, although it has exclusive jurisdiction to determine whether there has been an overpayment. See TheTravelers Insurance Co. v. Rushing, 36 N.C. App. 226,243 S.E.2d 420(1978); N.C.G.S. §§ 97-87 and 97-91. However, the Commission can and consistently does allow a defendant credit against any future obligation for payments of compensation "not due and payable when made", and most frequently when paid while the parties disagree over whether it should be paid as temporary total or permanent partial disability. N.C.G.S. § 97-42. The Commission strongly encourages payment of sums admittedly due while the parties contest how they should be characterized.
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding good ground to reconsider the evidence, the Full Commission REVERSES the subject Opinion and Award, and makes the following FINDINGS OF FACT:
The following were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. All parties hereto are subject to and bound by the North Carolina Workers' Compensation Act.
2. On March 23, 1990, plaintiff sustained an injury by accident when he strained his back while working for defendant-employer.
3. At the time of the injury by accident, there was an employer/employee relationship between the parties, and employee's average weekly wage was $325.00, yielding a compensation rate of $216.67.
4. Temporary total disability compensation was paid by defendants from March 24, 1990 to September 8, 1990.
FINDINGS OF FACT
1. Plaintiff's injury by accident on March 23, 1990 occurred when he strained his back while shoveling. Physical activities normally required by plaintiff's job as an oil delivery man included driving an oil truck and dragging a hose to fill tanks at the delivery locations. Plaintiff was initially treated by a chiropractor, Dr. Steven G. Fleming. Plaintiff was subsequently referred to Dr. William M. Huffstutter, neurologist, of Asheville, North Carolina. Dr. Huffstutter initially examined employee and ordered a CT scan, which showed degenerative disc disease at L4-5 but no herniated disc. Dr. Huffstutter treated plaintiff conservatively with the use of anti-inflammatory medication and mild muscle relaxers. On May 9, 1990, Dr. Huffstutter's impression was that employee had sustained a "lumbosacral strain" which was improving with conservative management. On June 12, 1990, Dr. Huffstutter released plaintiff to return to work with no shoveling or lifting more than 30 pounds. It was Dr. Huffstutter's impression at that time that plaintiff would be able to return to work as a truck driver.
2. On June 11, 1990, plaintiff was seen by Dr. Nathan L. Burkhardt. Dr. Burkhardt reviewed the previous x-rays and CT scan, concluding that they revealed some unimpressive mild spinal stenosis at L4-5. Dr. Burkhardt was of the impression that plaintiff had a lumbosacral strain which should resolve with time. Dr. Burkhardt felt that plaintiff did not have a surgical or ruptured disc, or a mechanical structural problem which should persist, and that plaintiff could return to work the following week. In a letter August 3, 1990, Dr. Burkhardt stated that plaintiff had sustained a 5 percent permanent partial disability of his back.
3. Pursuant to the Form 21 agreement, and as shown on Form 24, plaintiff was paid compensation for temporary total disability through August 7, 1990 in the total amount of $4,333.40. After approval of Form 24, payments continued through September 8, 1990. The Form 24 gave as grounds for stopping payment that Dr. Huffstutter "released the claimant to return to work 6/12/90; the employer offered a position within the claimant's modified work status at same wages and the claimant has refused."
4. On June 21, 1990, Rick Perkins, president of defendant-employer, offered plaintiff a job within Dr. Huffstutter's restrictions at one of their convenience stores. The job required lifting not more than 20 pounds, running the register, stocking various light merchandise, cleaning and dusting the shelves and counters, and other duties arising in the operation of a convenience store. Plaintiff was to work a nine-hour shift during which, as these duties imply, he would spend a good deal of time moving and on his feet. This job was beyond the plaintiff's physical abilities to perform on a regular, full-time basis.
5. Prior to his employment with the defendant, and until September, 1991, plaintiff continued to work as manager for the Fraternal Order of Eagles, Inc., earning $276.73 a week in 1990. Plaintiff's hours for the Fraternal Order of Eagles, Inc. were flexible, and he worked at times as much as 40 hours per week. The job (with which his wife helped him) involved planning and discussion with people, bookkeeping, keeping membership records and putting out a newsletter, but required little physical exertion. Plaintiff testified at the hearing that he was not asked by defendant about being employed by the Fraternal Order of Eagles, Inc. Because of the flexible hours and type of tasks involved with the Fraternal Order of Eagles, Inc., plaintiff was able to do that job while working regular hours as an oil truck driver and delivery man for both defendant and his prior employer, Texico.
6. In addition to working for the Fraternal Order of Eagles, Inc., plaintiff continued to receive income after the accident from other sources and activities that predated his employment with the defendant. Plaintiff received approximately $1,300.00 per month in passive income from rental properties owned together with his wife. He simply collected rent and did not repair, clean, mow, etc., at the properties. Plaintiff also raised and sold Chinese Sharpei puppies as a hobby. When he was able, plaintiff lifted 25 pound bags of dog food and hosed down the dog pens, although his wife fed the dogs most of the time after the accident. Plaintiff was involved in a video game business at one time, but a fire destroyed it in 1985 prior to plaintiff's injury by accident. Plaintiff helped with the Eagles' bingo games and served as their secretary after giving up the manager position, but derived no income from these efforts. Income from sources other than the defendant is irrelevant to the calculations of the plaintiff's average weekly wage and compensation rate as it is not paid or insured by the defendant employer. The exertion necessary for these activities was not comparable to that required by his former employment with defendant, or the convenience store job, and does not contradict Dr. Van Blaricom's opinion of plaintiff's physical limitations on August 17, 1992.
7. Plaintiff came under the care of Dr. L. S. Van Blaricom in August of 1990, who discharged him on December 13, 1990 with a 10% permanent partial impairment rating attributed to the March 23, 1990 accident, in addition to pre-existing degenerative changes. However, he felt then that the plaintiff should not return to his former employment, and recommended that he complete a back school program he was then attending. He returned to Dr. Van Blaricom's office on July 1, 1991, and he complained of the same symptoms that he had when Dr. Van Blaricom had seen him previously. Plaintiff described to Dr. Van Blaricom pain that severely limited his physical activity: pain from riding in a car for more that an hour, trying to use a weed eater, or making any sudden, jarring movement. He described having trouble getting up after squatting down. Plaintiff gave Dr. Van Blaricom a specific history of radiating pain into the right buttock, sometimes down to the calf. As a result of plaintiff's continuing complaints, Dr. Van Blaricom ran new and different studies. A myelogram and post-myelogram CT scan performed on July 15, 1991 showed disc bulging or herniation of the fourth lumbar disc which was causing compression of the right fifth lumbar nerve root at the fourth lumbar level. This was the same disc where he had observed problems in the previous year related to the accident in March 1990. To the extent the nerve compression was a new result of the herniation or exacerbation of this damaged disc in the accident, it was the result of everyday "traumas" such as bends, lifts, twists, coughs, sneezes and even prolonged sitting, and thus was a natural consequence of the compensable accident. Dr. Van Blaricom testified in his deposition that it was unlikely that in July of 1991 plaintiff could have returned to his former employment as a truck driver, and that if he had, he would not be an effective employee because almost anything he would have to do would have just made him hurt and stop working. Based on his new findings, the doctor recommended that plaintiff consider surgery.
8. Plaintiff was not examined by him again until the day of Dr. Van Blaricom's deposition, August 19, 1992. Plaintiff's sciatic problem had apparently resolved from taking it easy and not aggravating the back, and Dr. Van Blaricom did not feel plaintiff was a surgical candidate at that time. However, plaintiff continued to have a mechanical back problem with sharp pain upon jarring movement, and back pain proportional to vigor of physical activity. Plaintiff had not reached maximum medical improvement, and would benefit from a work-hardening program. Restrictions included avoiding lifting more than 30 pounds and frequent bending and lifting, climbing, pushing or pulling.
9. Plaintiff testified on February 24, 1992 that his back was the same that day as it was when he got hurt. His back catches at times and he can hardly get out of bed. Plaintiff cannot do any gardening. He has tried but is not able to use the weed eater because his back catches. He gave up golf because he can't swing a club. He has to be careful stepping off a curb or it will catch. These are examples of plaintiff's limitations. Plaintiff's testimony that his back symptoms are essentially the same as shortly after the injury by accident is credible in light of Dr. Van Blaricom's July, 1991 objective findings.
10. Plaintiff was temporarily totally disabled from the date of his injury by accident of March 23, 1990 through August 19, 1992. As a result of his compensable injury, the referenced medical treatment was reasonably required to effect a cure or give relief from the date of the injury by accident. Plaintiff has established that treatment rendered him by Dr. Van Blaricom after his release from care December 13, 1990 was causally related to his compensable injury of March 23, 1990.
* * * * * * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. Plaintiff is entitled to additional temporary total disability compensation from September 8, 1990 through August 19, 1992, and until plaintiff resumes employment or further orders of the Commission. N.C.G.S. 97-2(9); N.C.G.S. 97-29.
2. Plaintiff is entitled to such medical compensation as may tend to effect a cure, give relief, or shorten the period of disability resulting from plaintiff's injury by accident of March 23, 1990. N.C.G.S. §§ 97-25 and 97-2(19); Hyler v. GTE ProductsCo., 333 N.C. 258, 425 S.E.2d 698 (1993).
* * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1., Defendants shall pay plaintiff additional temporary total disability compensation for the period from September 8, 1990 through August 19, 1992, subject to the attorney's fee hereinafter approved. So much of said compensation as has accrued shall be paid in one lump sum.
2. A reasonable attorney's fee of 25% of said compensation is approved for plaintiff's counsel, and shall be deducted and paid from the lump sum, and paid by every fourth check of any subsequent compensation paid without contest, directly to counsel.
3. Defendants shall pay the costs of medical compensation incurred by reason of the subject compensable injury when the bills for same have been submitted to and approved by the Commission.
4. Defendants shall pay the costs, including an expert witness fee of $225.00 to Dr. Lawrence S. Van Blaricom.
 S/ ________________________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ _________________________ COY M. VANCE COMMISSIONER
S/ _________________________ FORREST H. SHUFORD, II SPECIAL DEPUTY COMMISSIONER
JRW/jss