The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lorrie L. Dollar. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Worker's Compensation Act, and the employment relationship existed between the parties on November 16, 1993.
2. Gates-McDonald was the carrier on the risk.
3. The plaintiff sustained a work-related injury on November 16, 1993, for which defendants have accepted compensability. However, defendants specifically deny that plaintiff's current conditions are related to the November 16, 1993 injury.
4. The issues for determination are:
 a. Did plaintiff sustain an additional period of temporary total disability beginning December 16, 1993 through June of 1994?
 b. Did plaintiff sustain permanent partial disability to his back as provided under N.C. GEN. STAT. § 97-31 as a result of his compensable injury?
 c. Alternatively, did plaintiff sustain a disfiguring scar as provided under N.C. GEN. STAT. § 97-31 (22) as a result of his compensable injury? and
 d. Has plaintiff sustained a period of temporary partial disability as provided under N.C. GEN. STAT. § 97-30 from June of 1994 to the present?
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. On November 16, 1993, the plaintiff was a fifty-five year old male who began working for defendant-employer in July of 1993 as a sheetmetal mechanic.
2. In 1972, while employed with Caterpillar Corporation in Cleveland, Ohio, the plaintiff suffered an injury to his back which required him to undergo an L5-S1 decompression laminectomy.
3. In the mid-1970's, the plaintiff was involved in a serious automobile accident in which he sustained a broken arm, and which he required a great deal of facial plastic surgery and left leg and knee surgery to repair a leg which plaintiff described as being "cut half off".
4. On November 16, 1993, the plaintiff fell as he descended a twelve-foot ladder, cutting his back on a notch on a steel door frame. The plaintiff did not hit his head in the fall.
5. The plaintiff was taken to Pitt County Memorial Hospital, where the four to five centimeter laceration over the sacrum received five internal and fifteen external stitches. Dr. Rita Monfredi, the treating physician, noted the injury appeared to be through the subcutaneous tissue; but there was no involvement of the bone or other muscles in the area.
6. The plaintiff returned to the job site on November 17, 1993 in order to complete accident forms, and he remained out of work for the remainder of the week.
7. The plaintiff returned to work on November 22, 1993, where he was assigned to light duty work in the tool room. Plaintiff's duties involved issuing, receiving, and inventorying tools and safety equipment.
8. On November 22, 1993, the plaintiff was referred for further treatment to Dr. George Klein by the employer. The plaintiff asked to see a doctor of East Carolina University (hereinafter "E.C.U."); however, defendants refused this request. The plaintiff complained to Dr. Klein of kidney problems, nausea, back soreness, muscle spasms in the ribs and back, dizziness, and dehydration. In subsequent visits with Dr. Klein, the plaintiff complained of sharp pains in his kidney area.
9. On November 30, 1993, the plaintiff was seen by Dr. Marjorie Deese in Dr. Klein's office, where he stated that his back was a lot better, although he continued to have kidney pain. A neurological examination was reported as normal. Dr. Deese started the plaintiff on antibiotics for a urinary tract infection.
10. Dr. Klein referred plaintiff to a urologist, who found no problems with plaintiff's kidneys other than the urinary tract infection which had resolved upon antibiotic therapy.
11. Dr. Klein found plaintiff to have an inner ear problem which caused the dizziness, for which medication was prescribed.
12. On December 8, 1993, Dr. Klein released the plaintiff to return to full duty, unless he had a recurrent problem with dizziness.
13. Dr. Klein has opined that plaintiff's dizziness was not causally related to the compensable injury.
14. Furthermore, Dr. Klein has opined that plaintiff's urinary tract infection was not causally related to the compensable injury.
15. The plaintiff continued to work in the tool room until December 16, 1993, due to the employer's concerns due to plaintiff's continued complaints of dizziness and the fact that the regular job required plaintiff to climb ladders.
16. On December 16, 1993, the tool room job was no longer available; and plaintiff was advised that he could return to his regular job when his dizziness resolved.
17. After December 16, 1993, the plaintiff made no effort to return to his job as a sheetmetal mechanic with defendant-employer.
18. On November 24, 1993, the plaintiff self-referred to Dr. Flower at East Carolina Medical School; and he was seen for two visits by Dr. Paul Cunningham for complaints of muscular back pain. Dr. Cunningham found no evidence of neurological problems and referred the plaintiff to Dr. Harvell. The plaintiff did not request permission from defendants for these medical visits.
19. On March 3, 1994, the plaintiff complained of chronic sensation loss in the left distal lower leg and dorsum of the foot. The plaintiff also voiced complaints of significant back pain, but no complaints of dizziness. The plaintiff related a history of back surgery in 1972 and left Dr. Harvell with the impression that his back had been asymptomatic since then. The plaintiff advised Dr. Harvell that he had recovered after the November 16, 1993 fall, and that he had reinjured his back in the tool room, lifting a threaded dye which weighed one hundred and twenty-five pounds.
20. J. C. Britt, project manager for defendant-employer, was never notified by plaintiff of any lifting episode in the tool room, even though plaintiff was aware of reporting requirements. Furthermore, there was no one hundred and twenty-five pound threaded dye, or similar item on the Proctor and Gamble job site where plaintiff worked.
21. The plaintiff never reported a lifting incident to Dr. Klein, even though plaintiff was treating with Dr. Klein during the entire time he worked in the tool room.
22. The greater weight of the evidence suggests that there was no lifting incident in the tool room.
23. The plaintiff admitted at the hearing that he had been experiencing periodic episodes of back pain prior to November 16, 1993.
24. Since the 1972 back surgery, the plaintiff developed moderately severe degenerative disc disease, in the opinion of Dr. Harvell. A myelogram ordered by Dr. Harvell also disclosed that plaintiff has arachnoiditis, an inflammation involving the lower lumbar nerve roots.
25. The plaintiff returned to Dr. Klein for medication for blood pressure problems in February of 1994. The plaintiff did not report any lifting injury to his back while working in the tool room.
26. Dr. Harvell has opined that it is possible that plaintiff's back pain is due to the arachnoiditis and the moderately severe degenerative disc disease. The plaintiff did not advise Dr. Harvell that he was experiencing back pain prior to the November 16, 1993 fall; therefore, Dr. Harvell could not render an opinion as to whether the fall exacerbated the arachnoiditis or whether the arachnoiditis was the cause of the problem.
27. On April 5, 1994, Dr. Harvell found plaintiff to be at maximum medical improvement and rated plaintiff as having a ten percent permanent impairment to his back, which was due in part to the arachnoiditis.
28. On June 6, 1994, the plaintiff began working with Ferrier Sheetmetal where he earned $8.50 per hour, working forty to fifty hours per week.
29. The scar which plaintiff sustained as a result of the compensable injury is not so serious as to adversely affect plaintiff's appearance nor does it affect plaintiff's opportunity for remunerative employment, as the scar is located below the waist-line on plaintiff's back.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. As a result of the admittedly compensable accident on November 16, 1993, the plaintiff was out of work for only five days. Pursuant to N.C. GEN. STAT. § 97-28, no compensation shall be allowed for the first seven calendar days of disability. Therefore, the plaintiff is not entitled to temporary total disability compensation.
2. The plaintiff is not entitled to permanent partial disability compensation as a result of the scar he sustained on his low back in the compensable injury. A disfigurement must be evidence by an outward observable blemish, scar or mutilation, under the Act; and it must be so permanent and serious as to hamper or handicap the person in his earnings or in securing employment. Branham v. Denny Roll Panel Co., 223 N.C. 233,25 S.E.2d 685 (1943).
3. The plaintiff has failed to carry the burden of proof to establish that he retains any permanent partial disability to his back, within the meaning of N.C. GEN. STAT. § 97-31 (23). Dr. Harvell was unable to render an opinion that the ten percent rating was in any way due to the compensable injury. No other medical evidence was offered to advance plaintiff's claim in this issue.
4. The plaintiff did not sustain a lifting injury in the tool room. The greater weight of the evidence suggests that plaintiff's complaint of back and leg pain to Dr. Harvell were not due to causes related to any lifting episode in the tool room.
5. The plaintiff's inability to work after December 16, 1993 was not due to the admittedly compensable injury, but rather was due to plaintiff's unrelated complaints of dizziness. The plaintiff made no effort to return to his regular job with defendant-employer after his dizziness resolved; but rather, he chose to work for another sheetmetal company, even though the defendants advised plaintiff that he could return to his regular job when the dizziness resolved.
6. The plaintiff is not entitled to temporary partial disability compensation, as any reduction in earning capacity was not due to the admittedly compensable injury.
7. Plaintiff's treatment by Dr. Flowers, Dr. Cunningham, and Dr. Harvell were unauthorized. The plaintiff's initial request on or about November 22, 1993, to defendants to treat with doctors at E.C.U. was refused. Thereafter, the plaintiff failed to seek approved form either the defendants or the North Carolina Industrial Commission. Therefore, the plaintiff is not entitled to have defendants pay for medical expenses incurred as a result of treatment provided by Dr. Flower, Dr. Cunningham and Dr. Harvell.
8. Defendants shall pay medical expenses for treatment provided at Pitt Memorial Hospital on November 16, 1993, and by Dr. Klein and his associates, and Dr. Hines.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim for temporary total disability compensation is, and under the law must be, DENIED.
2. Plaintiff's claim for permanent partial disability compensation under N.C. GEN. STAT. § 97-31 (22) and -(23) is, and under the law must be, DENIED.
3. Plaintiff's claim for temporary partial disability compensation is, and under the law must be, DENIED.
4. Defendants shall pay for medical expenses incurred as a result of treatment received at Pitt Memorial Hospital, by Dr. Klein and his associates, and by Dr. Hines, including any testing ordered by said doctors. The defendants specifically shall not be liable for medical expenses incurred by plaintiff as a result of treatment rendered by Dr. Flowers, Dr. Cunningham, and Dr. Harvell, which was unauthorized.
5. Defendants shall pay the costs.
FOR THE FULL COMMISSION
 S/ _________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ _________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
CMV/cnp/mj 6/12/96