**NATIONAL HOMEOPATHIC HOSPITAL ASS'N OF DISTRICT OF COLUMBIA et al. v. BRITTON, Deputy Com'r.**

No. 8688.

United States Court of Appeals District of Columbia.

Argued Nov. 8, 1944.

Decided Jan. 8, 1945.

Writ of Certiorari Denied May 7, 1945.

GRONER, Chief Justice, dissenting.

Mr. James E. McCabe, of Washington, D. C., for appellants.

Mr. Ward E. Boote, Chief Counsel, United States Employees' Compensation Commission, of Washington, D. C., with whom Messrs. Edward M. Curran, United States Attorney, and Daniel B. Maher, Assistant United States Attorney, both of Washington, D. C., were on the brief, for appellee.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

EDGERTON, Associate Justice.

This is a workman's compensation case. Frank Tyler fell in the course of his work and fractured his right kneecap. Previous accidents, none of them connected with any employment, had fractured the same kneecap and had led to amputation of the left leg and left arm. The fracture caused by the fall, combined with the previous fracture and amputations, caused permanent total disability. The Deputy Commissioner awarded compensation based upon permanent total disability and upon Tyler's earning capacity at the time of the fall. The employer and the insurance carrier sued in the District Court to set aside the award, and they now appeal from a judgment dismissing their complaint.

Appellants contend that the award, as against them, should be for permanent partial disability only. They base this contention upon the following language in § 908 (f) of the compensation act:[1] "If an employee receive an injury which of itself would only cause permanent partial disability but which, *combined with a previous disability, does in fact cause permanent total disability*,[2] the employer shall provide compensation only for the disability caused by the subsequent injury: *Provided, however*, That in addition to compensation for such permanent partial disability, and after the cessation of the payments for the prescribed period of weeks, the employee shall be paid the remainder of the compensation that would be due for permanent total disability. Such additional compensation shall be paid out of the special fund established in section 944 of this chapter." Appellants contend that Tyler's permanent total disability is caused by his recent injury "combined with a previous disability." It follows, they contend, that his employer should provide compensation only for partial disability and that the remainder of the compensation due for total disability should be paid out of the special fund.

If the compensation act used the words "disability" and "injury" in their ordinary senses, appellants' position would be correct. But this is not the case. On the contrary, the act uses these words in special senses which it defines. "In such circumstances definition by the average man or even by the ordinary dictionary * * * is not a substitute for the definition set before us by the lawmakers with instructions to apply it to the exclusion of all others."[3] The act provides that " '*disability' means incapacity because of injury* to earn the wages which the employee was receiving at the time of injury in the same or any other employment." It provides further that " '*injury' means accidental injury* or death *arising out, of and in the course of employment*, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, and includes an injury caused by the willful act of a third person directed against an employee because of his employment."[4] If the relevant parts of these definitions are read, as they must be read, in place of the defined word "disability," the statutory phrase "combined with a previous disability" becomes: "combined with a previous incapacity because of accidental injury arising out of and in the course of employment." Since Tyler's previous incapacity did not arise out of or in the course of employment, the statutory phrase has no application to this case. Appellants' contention therefore fails.[5]

---

[1] Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., § 908(f), 44 Stat. 1424, 1429; made applicable in the District of Columbia as a workmen's compensation act by D.C. Code, 1940, § 36—501, 45 Stat. 600, 33 U.S.C.A. § 901 note.

[2] Emphasis supplied.

[3] Fox v. Standard Oil Co., 294 U.S. 87, 96, 55 S.Ct. 333, 337, 79 L.Ed. 780.

[4] 33 U.S.C.A. § 902(2), (10). Emphasis supplied.

[5] Grays Harbor Stevedore Co. v. Marshall, D.C., W.D.Wash., 36 F.2d 814; Liberty Stevedoring Co. v. Cardillo, D.C.E.D. N.Y., 18 F.Supp. 729. Decisions under the New York act, on which the federal act is based, are to similar effect. La Belle v. Britton Stone & Supply Corp., 247 App. Div. 843, 286 N.Y.S. 347; Van Ooteghem

In opposition to this view, the argument has been advanced that it is not cricket to apply relevant parts and ignore irrelevant parts of the statutory definition of "injury." If the words "or death" as well as the words "accidental injury" were read into § 908 (f) they would produce incongruous language, viz. "combined with a previous incapacity because of accidental injury *or death* arising out of and in the course of employment."[6] Therefore, it has been argued, no part of the statutory definition of "injury" should be applied; the words "arising out of and in the course of employment" should be ignored; and the word "injury" should be given its ordinary meaning. The fallacy of this argument appears if it is applied to other instances of the word "injury." Examples may be taken from § 908 (f) itself. It provides: "If an employee receive an injury which of itself would only cause permanent partial disability but which, combined with a previous disability, does in fact cause permanent total disability, the employer shall provide compensation only for the disability caused by the subsequent injury * * *." To insert the words "or death" as well as the words "accidental injury," etc., in place of the sixth word, and of the last word, of the quotation would produce this language: "If an employee receive an accidental injury *or death* arising out of and in the course of employment which of itself could only cause permanent partial *disability,* but which, combined with a previous disability, does in

fact cause permanent total *disability,* the employer shall provide compensation only for the *disability* caused by the subsequent accidental injury *or death* arising out of and in the course of employment." Since this language is incongruous it follows, if the argument which has been advanced in support of appellants' position is correct, that no part of the statutory definition of "injury" should be applied; that the words "arising out of and in the course of employment" should be ignored; and that the word "injury" should be given its ordinary meaning: with the result that the employer must pay compensation for non-industrial as well as for industrial accidents. The argument in question would, in fact, make the entire compensation act apply to non-industrial as well as to industrial accidents.[7] The flaw in the argument is simply that the statutory definition of "injury" comprises alternative events of different sorts. These events include "accidental injury" and "death." It is not necessary that both occur in order that "injury" occur. The context of the word "injury" in any given clause of the statute shows the type or types of "injury" to which that clause refers. Obviously "accidental injury" is, and "death" is not, the sort of "injury" that causes "disability." Since § 908 (f) deals with "disability," it deals with "accidental injury" and it does not deal with "death." But the express requirement of a connection between employment and injury applies to either sort of "injury." There is no alternative to

v. Sisters of the Good Shepherd, 249 App. Div. 898, 292 N.Y.S. 788. Cf. Turkish v. True Health Bakery, 254 App.Div. 791, 4 N.Y.S.2d 273, in which deduction for a prior *industrial* accident was approved.

Throughout the fifty sections of the compensation act the words "disability" and "injury" are used repeatedly in their specially defined senses. Appellants would read them differently in § 908(f). But "disability" is used in some twenty other instances in § 908 itself, and in each instance it clearly carries its specially defined sense. We think Congress would have used a different word in § 908(f), or would have added a qualifying phrase, if it had intended to refer to *incapacity* or *defect* from whatever cause and not merely to "disability" as defined.

6 The incongruity of this reading would be verbal only; the incongruous phrase "previous incapacity because of * * * death" would produce no legal or practical effects whatever.

7 To give another example of this fact: § 909 provides "If the injury causes death, the compensation * * * shall be payable * * *." To substitute the phrase "accidental injury or death" for the word "injury" in § 909 would produce this language: "If the accidental injury *or death* arising out of and in the course of employment *causes death,* the compensation * * shall be payable * * *" The argument in question would then proceed: since *death,* which is a part of the statutory definition of "injury," cannot sensibly be read in place of the word "injury" in § 909, no part of the definition should be applied; the words "arising out of and in the course of employment" should be ignored; and the word "injury" should be given its ordinary meaning; with the result that compensation must be paid whether or not there is a connection between the "injury" and the employment.

that requirement. To ignore it is to rewrite the statute.

■■ In our opinion the meaning of the statute is so clear that there is no room for a choice between different constructions. But even if the meaning were obscure, settled principles of construction would lead to the result which we have reached. In a negligence case, the question is not what the accident would have done to a different man but what it actually did to its victim. This is equally true in compensation cases. Therefore the employer must, in general, compensate the workman for the consequences of an accident although his previous defects cooperated in producing them.[8] Section 908 (f) creates an exception to that general principle. It should therefore be construed narrowly.[9] Appellants ask us to construe it broadly. And the broad construction which they advocate would defeat not only the letter of the statute but its purpose. For the special fund established by § 944 is a small fund, supplied only by payments of $1,000 each which are required to be made in the exceptional death cases in which no person can be found who is entitled to receive compensation. The Deputy Commissioner says and we have no reason to doubt that the fund would soon be exhausted if it were to be drawn upon in every case in which a total disability results from the combination of an "injury" with a previous defect or incapacity. There would then be no way of paying the claims which Congress intended should be paid out of this fund. The totally disabled employees concerned would then receive compensation for partial disability only. "There is a presumption against a construction which would render a statute ineffective or inefficient or which would cause grave public injury or even inconvenience."[10] Perhaps Congress might better have established a larger special fund, subjected it to claims like the one in suit, and relieved employers of such claims, in order to encourage employment of handicapped men. But it would be injurious as well as unauthorized for a court to relieve employers of such claims and impose them upon the small fund which Congress did establish.

Affirmed.

GRONER, C. J. (dissenting).

The question in this case is important in the administration of the Longshoremen's Act, and, so far as I am advised, is new and undecided. It arises out of a statutory exception to the general provision of employer liability and turns upon the meaning of Section 908 (f) of the Act:

"(1) If an employee receive an injury which of itself would only cause permanent partial disability but which, combined with a previous disability, does in fact cause permanent total disability, the employer shall provide compensation only for the disability caused by the subsequent injury."[1]

This language, as the majority concede, read in its ordinary sense, leaves nothing for construction, but it is held that since Congress has defined certain words used in the Act, the intent and purpose—where

[8] Hoage v. Employers' Liability Assurance Corp., Ltd., 62 App.D.C. 77, 64 F.2d 715, certiorari denied. Employers' Liability Assurance Corp. v. Kerper, 290 U.S. 637, 54 S.Ct. 54, 78 L.Ed. 554; Commercial Casualty Ins. Co. v. Hoage, 64 App.D.C. 158, 75 F.2d 677; Great Atlantic & Pacific Tea Co. v. Cardillo, 75 U.S.App.D.C. 342, 127 F.2d 334.

[9] Piedmont & Northern Ry. Co. v. I. C. C., 286 U.S. 299, 311, 52 S.Ct. 541, 76 L. Ed. 1115.

[10] United States v. Powers, 307 U.S. 214, 217, 59 S.Ct. 805, 807, 83 L.Ed. 1245.

[1] 33 U.S.C.A. § 908 (remainder of paragraph f): " * * * Provided, however, That in addition to compensation for such permanent partial disability, and after the cessation of the payments for the prescribed period of weeks, the employee shall be paid the remainder of the compensation that would be due for permanent total disability. Such additional compensation shall be paid out of the special fund established in section 944 of this chapter."

The nature and cause of the prior injuries are shown in the Deputy Commissioner's findings, as follows:

" * * * that prior to the said injury the claimant had suffered accidents as follows: (1) when he was a child a railroad train ran over his left lower leg, as a result of which his left lower leg was amputated two and one-half inches below the knee; (2) approximately 28 years ago he was attacked by a man who struck him on the left arm with a stick, as a result of which his left arm was amputated at its surgical neck; and (3) in January 1942, he slipped on a wet pavement and fell, striking his right knee, as a result of which his right patella was fractured;"

those words are used—must be ascertained by giving them the precise meaning which Congress has applied to them; and I am not disposed to quarrel with this conclusion. But in my opinion the method of construction adopted goes beyond the allowable limit. The answer to the question depends upon the meaning of the word "disability", in the third line of the section, and the statutory definition is— "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." Accordingly, by omitting the word "disability" and inserting in its place the statutory definition, the sentence in question would be made to read:

"If an employee receive an injury which of itself would only cause permanent partial disability but which, combined with previous *incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment,* does in fact cause permanent total disability, the employer shall provide compensation only for the disability caused by the subsequent injury."

But since the inclusion of the language of this definition in the paragraph in place of the word "disability" would leave the ordinary and accepted sense of the original words unchanged, it is argued by the Commissioner and decided by the court that there should be tied in to the paragraph also the statutory definition of the word "injury", which is, "accidental injury or death arising out of and in the course of employment * * *", and as a result of this tying-in method, the paragraph would then be made to read:

"If an employee receive an injury which of itself would only cause permanent partial disability but which, combined with a previous *incapacity because of accidental injury or death arising out of and in the course of employment,* does in fact cause permanent total disability, the employer shall provide compensation only for the disability caused by the subsequent injury."

But it is obvious that these inter-replacements of words will not fit into this *exception* sentence. To insert the statutory definition of "injury" within the statutory definition of "disability", all within the paragraph here considered, produces a manifest incongruity, for, as shown above, it would literally result in this:

"* * * a previous *incapacity* because of accidental injury or *death*"—

And if to avoid this it be argued that only a portion of the definition of injury should be inserted, the result would be to change or at least to limit the statutory definition only to produce a desired result, which no one would urge or defend. It is evident, therefore, that these definitions were not made with watch-like precision and should not be so applied.

If the intent of Congress has been, as the opinion holds, to limit the applicability of § 908 (f) to cases in which the "previous disability" was the result of an industrial or occupational injury, protected by a compensation statute, it could easily have accomplished this by the insertion of the word "compensable" between the words "previous" and "disability", in which case the *exception* clause would have read:

If an employee receive an injury which of itself would only cause permanent partial disability but which, combined with a previous *compensable* disability, does in fact cause permanent total disability, the employer shall, etc.

But I am unable to find anything in the Act, or in its legislative history, or in fair reasoning, which indicates that Congress had that purpose in mind. On the contrary, it seems to me clear that the statutory definition of the word "disability" from its very language was considered necessary only as a guide to the Commissioner in determining the classes of cases which under the Act are compensable, and as to which his jurisdiction extended, and that it has no proper setting or relevancy to the *exception* clause. Accordingly, I am of opinion that the word "disability," as used in that clause, was intended to be given its ordinary and accepted meaning and was not intended as a "studied enumeration of subtle shades of meaning." But whether this be correct or not, I can find no warrant anywhere for tying-in the two definitions on the theory that Congress used the word "disability" or the word "injury" as a convenient symbol, to avoid the repeated use of elaborate and complicated language, when, as we have seen, the purpose—if there was such purpose—could have been obtained by the insertion of a single word. It seems to me clear that when Congress inserted the clause in question, its object and concern were to make an exception to the provisions of the Act which impose on the em-

ployer a fixed liability in all cases of industrial or occupational injury; and while securing full compensation to the injured by charging part of the cost to the special fund, to hold the employer responsible only for that part which arose out of the then employment. It is accordingly, I think, clearly incorrect to argue, as the Board does, that by construing the term "disability" in its ordinary sense, the effect would be to bring within the *exception clause* cases of injury from weak heart, diseased back, congenital deformity and such like afflictions. For, as was said by the New York Court of Appeals,[2] and as has been said by us, and indeed by practically all the circuits, weakness, whether pathological or traumatic, which does not become manifest until a subsequent accident, is not ordinarily thought of as prior disability under any provision of the Act. And this generally accepted view is borne out by the great volume of decisions holding that a subjective ailment, as a diseased heart, a diseased kidney, or a congenital deformity, or a pathological condition contributing to an injury or a death, does not relieve the employer from the obligation of total indemnity.[3] Doubtless, also, this would be true in cases like the one we have but for the *exception* which Congress wrote into the law; and it is not unreasonable, I think, to assume that Congress recognized that a one-legged man, a one-armed man, or a one-eyed man whose disability may have existed for years, would have little chance in the ordinary labor market if the employer is forewarned that in the event of an injury, he would be faced with full liability. The facts of this case seem to me to emphasize the correctness of the reasoning, for it is most unlikely, every one will agree, that the injured man in this case, with only one leg and one arm, would ever have found a job if the employer knew that, in the event of a minor accident, liability would be calculated on the basis of both the new

and the old. It seems therefore a fair conclusion that to avoid this discrimination in employment between an apparently sound and an obviously unsound man, Congress wrote in the exception and this, I think, is confirmed in a fair consideration of the evidence of the spokesman for labor, at the Congressional hearings, where, advocating the inclusion of the exception, he said:

"The second injury proposition is as much to the advantage of the employer and his interest as it is for the benefit of the employee. It protects that employer who has hired, say a one-eyed worker who goes and loses his other eye and becomes a total disability. The employer without this sort of thing (i. e. the exception clause) would have to pay total permanent disability compensation. Then, on the other hand, this also protects the worker with one eye from being denied employment on account of being an extra risk. Now, by simply taking this up in this way it is possible to protect both the employer and to protect the one-eyed employee also * * *."[4]

Clearly, this speaker understood and presumably the Congressional Committee likewise understood and intended the paragraph in question to mean precisely what the plain import of the language conveys.

And as lending some weight to this conclusion, it may not be out of place to suggest that the Longshoremen's Act is a national Act and, except in the District of Columbia, applies only to maritime workers. Is it then, it may be asked, only to persons previously injured in a maritime employment that the *exception section* applies? Or, if not, does it embrace only workers whose injury occurred in a State which had adopted the compensation principle (and there were some States which then had not), and without regard to the differing and divergent definitions of compensable injury? And if this be answered

[2] Schurick v. Bayer Co., 272 N.Y. 217, 5 N.E.2d 713.

[3] New Amsterdam Casualty Co. v. Cardillo, 71 App.D.C. 172, 108 F.2d 492; Commercial Cas. Ins. Co. v. Hoage, 64 App.D.C. 158, 75 F.2d 677; Hoage v. Employers' Liability Assur. Corp., 62 App. D.C. 77, 64 F.2d 715 (and cases there cited), Employers' Liability Assurance Corp. v. Kerper, certiorari denied, 290 U.S. 637, 54 S.Ct. 54, 78 L.Ed. 554; Pacific Employers' Ins. Co. v. Pillsbury, 9 Cir., 61 F.

2d 101; Gray's Harbor Stevedore Co. v. Marshall, D.C.W.D.Wash., 36 F.2d 814; Liberty Stevedoring Co. v. Cardillo, D.C. E.D.N.Y., 18 F.Supp. 729; Wood Preserving Corp. v. McManigal, D.C.W.D.Ky., 39 F.Supp. 177.

[4] Book I, House Committee Hearings, before Committee on Immigration, Naturalization and Insular Affairs, Interstate and Foreign Commerce, Irrigation and Reclamation, Judiciary, 1926, Vol. 438.

yes, where then is the language to be found on which to support such a Congressional intent or purpose, and what would have been the Congressional motive? I am wholly unable to find either the language or the intent in the Act or its legislative history.

I have carefully considered the Board's argument that the view expressed is not sustained by the New York compensation cases under the New York law, and several intermediate court decisions are cited to sustain this assertion. But an examination of these cases discloses that none of them decides the precise point we have here. Besides, the language of the New York and the Federal Acts discloses marked differences.

Accordingly I am of opinion the judgment below should be reversed.