**LONDON GUARANTEE & ACCIDENT CO., Limited, v. HOAGE, Deputy Com'r, et al.**

No. 6152.

United States Court of Appeals for the District of Columbia.

Argued May 10, 1934.

Decided June 25, 1934.

Edwin A. Swingle and Ernest A. Swingle, both of Washington, D. C., for appellant.

Martin F. O'Donoghue and Leslie C. Garnett, U. S. Atty., both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

MARTIN, Chief Justice.

This case arises under the Longshoremen's and Harbor Workers' Compensation Act (44 Stat. 1424 [33 USCA §§ 901–950]), made applicable to the District of Columbia by act of May 17, 1928 (45 Stat. 600, D. C. Code 1929, T. 19, §§ 11, 12, 33 USCA § 901 note).

A claim for compensation was filed with the United States Employees' Compensation Commission by Adaline Curtin as the widow of George H. Curtin, deceased, upon a claim that her husband, while in the employ of an employer as a bread baker, sustained personal injuries which arose out of and occurred in the course of his employment and resulted in his death.

The deputy commissioner after hearing the testimony awarded compensation to the widow. The lower court sustained this finding and dismissed a petition filed by appellant herein for an injunction. From this decree the appellant, being the insurance carrier, has appealed to this court.

It is contended by appellant that the finding of the deputy commissioner is wholly unsupported by evidence, and therefore that his decision was contrary to law and should be set aside.

The evidence introduced before the deputy commissioner tends to show that the decedent was 51 years of age at the time of his death; that he was employed as a bread baker at the time of his death; that he left home for his work on the afternoon of January 5, 1933, at about half past 1 o'clock in apparently good health except for a slight cold; that he commenced his work at about

2 o'clock; that at about 4 o'clock he had his dough made up for about 400 loaves of bread, and after it had risen he went to the oven to run the bread in by means of a so-called "peel," which has the shape of a long-handled paddle; that he was assisted in this work by one Gooding, a fellow employee, who put the bread upon the peel for Curtin; that on that afternoon all the doors and windows of the workroom in which deceased was working were closed and the temperature in the room ranged from 80 to 90 degrees, but the temperature in front of the oven where Curtin was working ranged from 110 to 120 degrees; that the oven door was open when Curtin was working before it, and he was right against the door pushing bread in on one of the long handles; that while he was engaged in this work he got a shortness of breath and could not run the bread in and called to Keuffner, a fellow workman, who was in the next room and who came and ran the bread into the oven for Curtin; that Curtin then went out into an adjoining room and reclined upon a bench, and when Keuffner got through running the bread into the oven he went out and saw Curtin lying on the bench resting, and Curtin said, "I thought I was a goner that time," and fell back and said nothing more; that Curtin then looked white, his lips were purple, there was perspiration all over his forehead, and his breath was coming hard; that he quickly became unconscious and died.

No autopsy was held upon the body of the deceased, but the testimony of four doctors appears in the record. It may fairly be concluded from all the testimony, including that of the doctors, that Curtin died of heart failure and that the crisis in this condition arose in substantial part from the work which he was then doing and the conditions under which he was working.

The testimony tends to show that the deceased was apparently in good health, except for a slight cold, when he went to work; that he made no complaints of any body ailment; that he had been working every day for six years next preceding the day of his death; that he had never been ill and never complained of being ill; and that he made no complaint at any time of any heart ailment. It is said, however, by one of the witnesses that the deceased upon several occasions had suffered from sourness of the stomach; otherwise the testimony concerning his prior condition of health is undisputed.

We think that upon the facts and conditions disclosed by the testimony the Deputy Commissioner was justified in concluding that the death of the deceased arose at least in substantial part from his employment. It may be conjectured that the deceased had a weak heart at and before the time of the occurrence, but the conditions under which he was then working directly contributed to the crisis which caused his death. "Conflict in testimony must here be disregarded. * * * The court may only inquire whether an essential matter of fact has been found without supporting evidence." Pacific Employers' Ins. Co. v. Pillsbury, Deputy Compensation Commissioner (C. C. A.) 61 F.(2d) 101, 102. We think accordingly that the decision of the Deputy Commissioner was not without evidence, and should be sustained.

The decree of the lower court is affirmed.