**COMMERCIAL CASUALTY INS. CO. et al. v. HOAGE, Deputy Com'r (THEODORE, Intervener).\***

**No. 6291.**

United States Court of Appeals for the District of Columbia.

Argued Jan. 9, 10, 1935.

Decided Feb. 4, 1935.

Norman Fischer, Stanley Fischer, L. S. Bendheim, and F. H. Myers, all of Washington, D. C., for appellants.

Leslie C. Garnett, U. S. Atty., H. L. Underwood, and Crandal Mackey, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This is an appeal from an award under the Workmen's Compensation Act (Longshoremen's and Harbor Worker's Compensation Act, 33 USCA § 901 et seq., made applicable to the District of Columbia, 45 Stat. 600 [D. C. Code 1929, T. 19, §§ 11, 12, 33 USCA § 901 note]).

Charles Theodore was employed as clerk in a grocery store in Washington city. His hours of service were from 7 a. m. to 7 p. m., except on Saturdays, when he worked from 6 a. m. to 10 p. m. On Saturday, December 26, 1931, around about 7 o'clock in the evening he went into a back room of the store to pile sacks of potatoes weighing 150 pounds each. The work required him to lift one sack on top of another until the pile was five or six feet high. When he had put the last sack on the pile, he came inside the front of the store looking pale and as though he were going to faint, and said he was sick and had a pain over his heart. He was sent home and, arriving there, told his wife he had collapsed at his work. To his physician, who was summoned, he said that he had felt perfectly well before he began lifting the sacks of potatoes, but that afterwards he was seized with a pain in the region of his heart and got somewhat weak and felt that he was going to fall.

Deceased never returned to work, but continued an invalid until his death, January 1, 1933. His family physician, immediately after the occurrence we have mentioned, diagnosed the cause of the trouble as an injury to the heart from lifting. Medically, he called the trouble aortic regurgitation. The doctor expressed the opinion that the heart condition was caused by a rupture or tearing of the aortic valve. He was asked on cross-examination this question: "Your diagnosis, then, as of December 27, 1931,

when you saw this man the first time following the alleged injury, was that he had a definite trauma to either the heart muscles or the valves of the heart which had caused a cardiac failure at that time?" And he answered: "One or both. He had a definite injury to the heart resulting from a trauma received by physical effort." The autopsy developed that death ensued from congestive heart failure.

The Deputy Commissioner, who heard the witnesses and actively participated in the examination of the medical experts, declares in his findings that deceased did sustain personal injury and that this injury arose out of and occurred in the course of his employment, and that it resulted in his death. To support this conclusion, he says that the evidence shows that the weakened condition of the heart first became manifest after the strenuous exertion by deceased in handling the sacks of potatoes, and that this weakened condition, though due to an infectious process, made deceased more susceptible to injury than would be the case with a person whose heart was normal. And so he finds that the labor of piling the sacks of potatoes precipitated the condition described as aortic regurgitation, which in turn caused death.

Our responsibility is to determine whether there is substantial evidence to sustain the Deputy Commissioner's findings. The judge of the lower court, to whom the question was first addressed, answered it affirmatively and, we think, correctly. There is in the record the usual amount of expert opinion pro and con, and all of this we have carefully considered. But, expressed in non-medical language, the facts developed before the Commissioner show that deceased was a man in middle life who, with the exception of some minor throat troubles, had worked ten or twelve hours a day continuously since he reached manhood's estate. During all of this time there was neither illness nor absence from work. Unknown to himself, he had developed an enlargement of the heart, probably produced by an infectious process of long standing—one of the doctors thought from congenital syphilis. But, whatever the cause, there was practical agreement on the proposition that the exertion of stacking sacks of potatoes weighing 150 pounds, in the weakened condition of his heart, was more apt to affect him injuriously than would be the case if his heart were healthy and normal; and this, we think, is so obviously the common sense of the situation as to be irresistible.

But the insurance carrier's position is that the autopsy disclosed that there was no traumatic injury to the heart, and, based on this finding, counsel argues that there was neither injury nor accident involved in the condition which developed in the evening of deceased's last day at the store. He tells us that the case is much like the gradual withdrawal of a sum of money deposited in a bank. While it lasts, it may be drawn on; when it is gone, the account is closed. And so he says in the case of deceased the gradual strain on his heart for years had exhausted its resistance and, when it came, the collapse was the result of all that had gone before, rather than the single event on the day in question. And there is medical opinion in the record to sustain this view, but to adopt it, as appellant asks us to do, we should have ourselves to weigh the evidence and determine where the preponderance lies, and this the statute does not permit.

Claimant's medical opinion is that there was an injury and that it was accidental. The family physician, after examining the report of the autopsy and from his personal knowledge of the case in the treatment of the patient for a year, says the strain of lifting caused the injury and the injury resulted in death. Other physicians support this conclusion. One of them said that a person with a diseased heart was more likely to suffer injury through heavy lifting than one with a normal heart, and that such heavy lifting would create the pathologic damage to the heart shown by the autopsy to be present in this case.

In view of all this, we cannot say there is no evidence to sustain the award. It has been held a number of times, and we think correctly, that an accidental injury may occur notwithstanding the injured is then engaged in his usual and ordinary work, and likewise that the injury need not be external. It is enough if something unexpectedly goes wrong within the human frame. And so, an award of damages has been sustained in a case in which injured was lifting a weight resulting in the breaking of a blood vessel, or the straining of a muscle, or in hernia. Hence it is that "accidental injury" includes any injury which is unexpected or not designed, and just as much includes injury sustained by an employee subject to physical infirmities as injury to one who is strong and robust.

Here, as we have seen, deceased had continued uninterruptedly to do his job for many years. Of a sudden, and while he was expending all of his strength and energy and

giving the best there was in him to the performance of a task which required the exertion of great physical strength, he collapsed. He had drawn the last ounce of strength from his diseased heart. To have taken the chance he did with knowledge of his condition would have been to invite disaster, but he did not know this, nor had he any reason to anticipate it. There was nothing in his previous experiences to warn him. In these circumstances, the thing that happened was fortuitous and, since there is enough evidence to show that the event accelerated his death, even though it was not the single cause, the award made by the Deputy Commissioner must be sustained. See our opinion in Hoage v. Em. L. As. Co., 62 App. D. C. 77, 64 F.(2d) 715, where the cases in point are collected and cited.

Affirmed.