### BOWERS v. HOAGE, Deputy Commissioner, et al.

### No. 6326.

United States Court of Appeals for the District of Columbia.

Argued Jan. 11, 1935.

Decided March 11, 1935.

Chapin Bauman and John H. Burnett, both of Washington, D. C., for appellant.

James E. McCabe, of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

HITZ, Associate Justice.

The appellant, as widow of one Jeff Bowers, claimed compensation before the United States Employees' Compensation Commission because of her husband's death.

Compensation being there denied, she sought injunctive relief against the Commission, and a review of its order, by a bill in equity in the Supreme Court of the District of Columbia.

This bill was dismissed on motion; and this appeal was taken from such action; the appellees being the Deputy Commissioner who made the order refusing compensation, the decedent's employer, and the insurance carrier.

The case has been twice heard before the Deputy Commissioner; twice in the Supreme Court of the District of Columbia; and twice in this court. The ultimate question in controversy is whether the decedent killed himself intentionally or accidentally, upon which question the lower tribunals have differed, and when the case was here before we remanded it to the Deputy Commissioner to make a finding of fact as to suicide or accident.

This has now been done, and on the theory of suicide, the Deputy Commissioner has rejected the claim for compensation because, as he puts it, "the employee's death was the result of his willful intent to injure or kill himself and that said injury and death did not arise out of his occupation."

The trial court, on a motion, dismissed the widow's bill to review this order, basing its action in part upon observations contained in our former opinion (Del Vecchio v. Bowers, 62 App. D. C. 327, 67 F.(2d) 751).

At 10:15 on the morning of September 10, 1931, Mr. Bowers was discovered lying on the floor of his employer's hardware store on Seventh street in the city of Washington, dying from a gunshot wound in the chest.

He was then unconscious, and was never able to give an explanation of the occurrence.

The bullet had passed entirely through his body on a nearly straight line, and lodged in a can of paint on a shelf. The

cartridge shell had been ejected and was found on the counter of the store, while his pistol was found in a partially closed drawer in the counter.

The store was in a neighborhood notoriously dangerous, where fighting was frequent and robberies numerous; previous managers of this store had provided themselves with pistols for their protection; Bowers had followed this custom, though not doing so in previous places of employment; and he was shot with his own pistol.

On the night before an attempt at burglary had been made and the back building of the store had been opened by forcing the door.

Just before the shooting Mr. Bowers had bargained with a carpenter to repair the woodwork of this door, after which Bowers himself was to install a new lock.

His body was discovered by this carpenter, who heard his groans while at work. So the death occurred in the decedent's place of employment, during his hours of employment, shortly after attending a matter of business, which must shortly return to him for further attention.

Mr. Bowers' accounts were found to be in order; he lived happily with his wife and child, and within his means; his bank balance was sufficient for any need, the record reveals; he was esteemed by his employer; many witnesses testified to his cheerful disposition; and that he was not given to worry or complaint.

The night before his death he wrote to his mother in Alabama, the letter bearing postmark of the Washington post office a few minutes after his death. This letter contained nothing unusual, and closed with a "sure hope these few lines will find you well. This leaves us very well. Excuse me for not writing sooner. Won't wait so long next time. Answer soon in long letter. May God bless you, from Jeff, Bonnie, Albert."

The motive relied on to indicate suicide was ill health, and while it is true that Mr. Bowers had undergone an operation for mastoiditis two years before, and was still troubled by a sequel or recurrence of that difficulty, he appears not to have consulted a physician until three weeks before his death. That physician arranged for his treatment without expense at a hospital, where he went on the three succeeding days following his examination, but not thereafter. The physician testified that Mr. Bowers did not seem much alarmed, though he had largely lost the hearing of one ear, and complained of some pain and consequent loss of sleep.

The fact that decedent was killed by his own gun held in his own hand was apparently regarded by the Deputy Commissioner as evidence of suicide, but since an attempt had been made to break into the premises on the night before, it was natural enough for Mr. Bowers, as manager of the store, on the next morning to examine the pistol he kept there for use in an emergency.

That the bullet entered the body on a nearly straight line, and that the muzzle of the pistol was evidently pointed toward the decedent at short range, were significant circumstances, but there is much unfortunate precedent for men looking into the wrong end of guns held in their own hands, with no intention of suicide, yet with tragic results.

We are convinced by our study of the record that the evidence is at least as consistent with accident as with suicide, and consequently that the finding of suicide is not in accordance with law, for while the act provides that no compensation shall be payable where an employee wilfully kills himself (section 903 (b), title 33, c. 18, US CA), it also provides, in section 920, that:

"In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary—

"(a) That the claim comes within the provisions of this chapter.

"(d) That the injury was not occasioned by the willful intention of the injured employee to injure or kill himself or another."

In this case these presumptions of law must turn the scale, for whatever measure of evidence may generally suffice to support other findings of a Deputy Commissioner, a finding of suicide in the absence of substantial evidence thereof is not in accordance with law. For substantial evidence must carry the quality of proof, with fitness to induce conviction; and the evidence on which the Deputy Commissioner acted here does not reach that standard.

This presumption against suicide is based on the love of life, extends alike to the sick and the well, and operates under the common law as well as in this statute. Travellers' Insurance Company v. McCon-

998

key, 127 U. S. 661, 667, 8 S. Ct. 1360, 32 L. Ed. 308.

As said by Mr. Justice Gray, when chief justice of Massachusetts, "by the common law of England, suicide was considered a crime against the laws of God and man, the lands and chattels of the criminal were forfeited to the King, his body had an ignominious burial in the highway, and he was deemed a murderer of himself and a felon." Com. v. Mink, 123 Mass. 422, 25 Am. Rep. 109.

Because of the absence of substantial evidence of suicide, as required by the act, the decree dismissing the bill is not in accordance with law, and is therefore reversed, with directions to remand the cause to the Deputy Commissioner to make an order for compensation.

The views of this opinion are thought to be supported by the following authorities: Interstate Commerce Comm. v. Louis. & Nash. R. R., 227 U. S. 88, 92, 33 S. Ct. 185, 57 L. Ed. 431; Travelers' Ins. Co. v. Allen (C. C. A. 8) 237 F. 78; Powell v. Hoage, 61 App. D. C. 99, 100, 57 F.(2d) 766; Fidelity & Casualty Co. of New York v. Burris, 61 App. D. C. 228, 59 F.(2d) 1042; New Amsterdam Casualty Co. v. Hoage, 61 App. D. C. 306, 307, 62 F.(2d) 468.

Reversed.