**AVIGNONE FRERES, Inc., et al. v. CARDILLO, Deputy Com'r of U. S. Employees Compensation Commission, et al.**

No. 7638.

United States Court of Appeals for the District of Columbia.

- Dec. 30, 1940.

Norman B. Frost, Frank H. Myers, and Frederic N. Towers, all of Washington, D. C., for appellants.

Edward M. Curran, U. S. Atty., William S. Tarver, Asst. U. S. Atty., Z. Lewis Dalby, Chief Counsel, Charles T. Branham, U. S. Employees' Compensation Commission, and Crandal Mackey, all of Washington, D. C., for appellees.

Before STEPHENS, VINSON, and EDGERTON, Associate Justices.

EDGERTON, Associate Justice.

This is a bill to set aside an award of compensation for the death of an employee.[1] The District Court dismissed the bill. The question is whether the Deputy Commissioner's finding that death resulted from an injury is supported by substantial evidence.

On August 16, 1936, in the course of his employment, a diabetic employee accidentally bruised his toe. In consequence the toenail came off, infection and gangrene developed and spread to the foot and leg, the toe was amputated on September 10, the metatarsal bone on September 26, the foot on November 7, and the leg just below the knee on November 18. The stump never completely healed and the man never returned to work. He was treated in a hospital from August 26, 1936, until July 11, 1937. Treatment and dressings continued at his home until October 1, 1937. On that day he lapsed into coma and died. So much is undisputed.

His last illness was diagnosed, in his lifetime, as pneumonia. The death certificate gave the cause of death as diabetes mellitus. An attending physician testified that "the immediate cause of death was due to the particular hemorrhage present at the brain and the death was entirely respiratory." A pathologist performed an autopsy and testified that "This man died as a result of a chronic glomerulonephritis," a pathological condition of the kidney, "with considerable other complications."

Two attending physicians said that there was no "causal connection" or "causal relation" between the injury, with its consequent series of operations, and the man's death. The pathologist said that "the injury is not a part and parcel of the nephritis that killed him * * * I cannot draw a direct causal effect between this injury to his foot and the cause of death as a result of the nephritis."

---

[1] Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424, 33 U.S.C.A. § 901 et seq.; made applicable to the District of Columbia as a Workmen's Compensation Law, 45 Stat. 600; D.C. Code, Tit. 19, Ch. 2, § 11, 33 U.S.C.A. § 901 note.

386

But the same pathologist testified that "the nephritis, of course, and the diabetes and the arteriosclerosis all going along together with the injury resulted in his death." In a report to the insurance carrier a month after the injury, one of the two attending physicians said, "In a diabetic, an injury of this kind, though trivial at the onset, may reach most serious proportions, and * * * in the case of Raymond Cook a very slight injury is unquestionably progressing to the point where he will lose his leg if not his life." At the hearing, this physician testified that "slight injuries to persons suffering diabetes often prove fatal" and that "when you start fooling around with surgery with a diabetic you are fooling around with something that has its potential danger." A physician who had not seen the patient testified that an injury which breaks the continuity of the skin is "potentially" dangerous to a diabetic; that four successive operations would "weaken his resistance" more than that of a person in good health; and that if the four successive wounds failed to heal, and the final one remained open at the time of death, the original injury "had a relation to his death as a cause."

■  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2] A reasonable man might well find here evidence adequate to support the common-sense conclusion[3] that an injury to a diabetic, which resulted in infection, gangrene, four amputations, and a permanently unhealed stump, probably hastened his death from disease. To hasten death is to cause it.[4] There was abundant testimony to the effect that such an injury, to such a man, with such consequences, might cause death, and some testimony that it did so. It is not even clear that there was any testimony to the contrary, i. e., any testimony which was intended to mean that the injury did not hasten death. Although the pathologist testified that the injury was not a "direct" cause of death, he testified in effect that it did contribute in one way or another to produce death; for he said that various other factors, "going along with the injury," resulted in death. And the attending physicians, who testified that there was no "causal relation" between injury and death, may perhaps have meant no more than that the injury was not a direct or a principal cause of death. We do not know what they would have said if they had been asked whether death was hastened by the consequences of the injury. But whether or not the testimony favorable to the award was contradicted, it was certainly substantial.

Affirmed.

[2] Consolidated Edison Company v. National Labor Relations Board, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126.

[3] Weight may be given to "the common sense of the situation." Commercial Casualty Ins. Co. v. Hoage, 64 App.D.C. 158, 159, 75 F.2d 677, 678.

[4] Cf. Miller, Criminal Law, § 24, and cases cited.