Jessie L. VENDEMIA, Widow of Thomas Vendemia, Appellant,

v.

Anthony J. CRISTALDI et al., Appellees.

No. 12239.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 11, 1955.

Decided March 17, 1955.

Mr. Benjamin F. Rossner, Washington, D. C., for appellant.

Mr. Ward E. Boote, Asst. Sol., United States Department of Labor, with whom

Messrs. Leo A. Rover, U. S. Atty., and Lewis Carroll, Asst. U. S. Atty., were on the brief, for appellee Donovan.

Mr. George A. Chadwick, Jr., Washington, D. C., with whom Mr. John A. Beck, Washington, D. C., was on the brief, for appellees Cristaldi and Employers Mutual Liability Ins. Co. of Wisconsin, Inc.

Before FAHY, DANAHER and BASTIAN, Circuit Judges.

FAHY, Circuit Judge.

The widow of Thomas Vendemia sued the appellees in the District Court to have set aside an order of the Deputy Commissioner of the District of Columbia Compensation District denying benefits she claimed under the Longshoremen's and Harbor Workers' Compensation Act [1] by reason of her husband's death. On the record of proceedings before the Deputy Commissioner the court gave summary judgment for appellees.[2] The widow appeals.

The Deputy Commissioner's order contains findings as to the employment and relationship of the parties. The employee, who was about 50 years of age and apparently enjoyed good health, had been an ornamental iron worker for about 25 years. On the day of his death he suddenly and unexpectedly suffered a severe attack accompanied by pain in the chest. This occurred just after lunch at a construction job where he and a fellow employee were making and fitting iron templates for railings on new concrete stairs. These stairs contained 40 steps from the basement to the second floor. From 7:30 to 11:15 a. m. the two men were engaged in carrying 50–75 pound iron bars up the stairs, laying them down and marking them to form patterns to insure true fabrication, then carrying them out to the employer's truck parked about 35 feet from the building. Here they heated and hammered the bars to appropriate size, repeating the entire process until a true measurement was obtained. From 11:15 to 12 noon they also carried two rails each weighing about 75 pounds from the basement to the first floor. The findings continue:

"* * * that from 12 noon to 12:30 the employee stopped work to eat his lunch; that shortly after eating his lunch he complained to his fellow-employee of pain in the chest, and went to secure a drink of water; that upon the employee's return he did not look well and he went and got another drink of water; that he then left the building and went to the truck and lay down on the seat in the cab of the truck, where he was found a short time later by his fellow-employee [;] that he died at 1:30 p. m. of coronary thrombosis * * *."[3]

The Deputy Commissioner concluded that death "was not caused by an injury arising out of and in the course of the employment."

The finding that coronary thrombosis was the cause of death is amply supported by the evidence. But the conclusion of the Deputy Commissioner does not appear in a context of supporting findings which enables us adequately to

1. Hereinafter referred to as the Act, 44 Stat. 1424 et seq., as amended, 33 U.S. C.A. § 901 et seq., made applicable to the District of Columbia by § 36–501, D.C.Code 1951.

2. The other appellees are the deceased husband's former employers and the latter's insurer. These, with the Deputy Commissioner, were defendants in the District Court.

3. The evidence indicates that on the previous day the deceased and a fellow employee had been carrying iron railings weighing about 150 pounds up and down stairs, although this does not appear in the findings.

The Deputy Commissioner found that the estimated temperatures at Fredericksburg, Virginia, where the work was being done, on May 27, 1952, were 69° at 8:30 a.m., 74° at 10:30 a.m., 77° to 78° at 12:30 noon, and 79° at 2:30 p.m. The estimated humidity at noon was 34 to 40%.

pass upon the correctness of the denial of an award.

*I. Events Preceding and Surrounding the Attack:* The conclusion that death was not caused by an injury arising out of and in the course of employment might mean that the pain suffered at the end of the lunch period was not caused by an injury within the meaning of the Act.[4] Or it could mean that though the attack was an injury it did not occur in the course of employment. It could also mean that the injury did not arise out of the employment or, in any event, did not cause the death.

A different result might be required on the evidence, dependent upon which meaning should be deemed the correct one. For example, if there was an injury incident to the chest pain obviously it arose in the course of employment. The only question then would be whether it arose out of the employment. We have held that the occurrence of an injury in the course of employment strengthens the presumption that it arises out of the employment, with doubts resolved in the claimant's favor. Hartford Accident & Indemnity Co. v. Cardillo, 72 App.D.C. 52, 54, 112 F.2d 11, 13, certiorari denied, 310 U.S. 649, 60 S.Ct. 1100, 84 L.Ed. 1415. And we have also held that where death in the course of employment is due to an illness which has taken a sudden and unusual turn for the worse, not shown by substantial evidence to be unrelated to the

employment, the statutory presumption makes the death compensable. Robinson v. Bradshaw, 92 U.S.App.D.C. 216, 206 F.2d 435, certiorari denied, 346 U.S. 899, 74 S.Ct. 226, 98 L.Ed. 400. We hesitate to apply these principles to the case before us, or, on the other hand, to reject their application, in the absence of an expression of view by the Deputy Commissioner as to whether the attack was an injury, if so the cause of the attack, the relation of Vendemia's work[5] to the attack, the relation of the attack to his death,[6] the existence of a weakened or diseased condition before the attack and, if so the relation in that event of the work to the attack. Should the Deputy Commissioner, however, not be able in his appraisal of the evidence to make findings of this character it would be helpful for his order so to reflect, so that our review would be informed by his position.

*II. The Post-Attack Events:* The uncontroverted medical testimony was to the effect that the noon-hour complaints of pain indicated the presence of a heart condition. This gave rise to an issue of fact as to whether the employee performed physical labor thereafter. As to this the testimony of Tyler, Vendemia's fellow employee on the fatal day, is important, but is not the subject of a finding by the Deputy Commissioner. While not altogether unambiguous it included testimony that Vendemia did perform work on the job after lunch.[7]

4. The term "injury" is defined as "accidental injury or death arising out of and in the course of employment". 33 U.S.C.A. § 902(2).

5. In referring to work we are not limiting our reference to that done on the day of the attack itself.

6. As bearing on the latter, the fact that death occurred so soon after the attack is evidence of causation. Berndt v. Dept. Labor & Ind., 44 Wash.2d 138, 144, 265 P.2d 1037, 1040; Merritt v. Dept. Labor & Ind., 41 Wash.2d 633, 251 P.2d 158. So also is the strenuous nature of deceased's work prior to the fatal attack. Commercial Casualty Ins. Co. v. Hoage, 64 App.D.C. 158, 75 F.2d 677, certiorari denied, 295 U.S. 733, 55 S.Ct. 645, 79

L.Ed. 1682; London Guarantee & Accident Co. v. Hoage, 63 App.D.C. 323, 72 F.2d 191.

7. The widow's complaint in the District Court duly noted the Commissioner's failure to make specific findings on this point. The fellow employee testified in part:

"Q. You testified that Mr. Vendemia actually worked after coming back from lunch, is that correct? A. He set the rail up.

"Q. He set the rail up? A. Yes.

"Q. What else did he do? A. He set the rail and wedged it—
\*     \*

"Q. What was Mr. Vendemia doing all this time?

■ If Vendemia took up his work again after the attack the question arises whether a then existing heart condition was thereby aggravated and his death hastened.[8] See Commercial Casualty Ins. Co. v. Hoage, 64 App.D.C. 158, 159, 75 F.2d 677, 678, certiorari denied, 295 U.S. 733, 55 S.Ct. 645, 79 L.Ed. 1682.

■ The Deputy Commissioner is not required to disclose his reasoning processes in reaching a conclusion, but the courts in discharging their own responsibilities in this case should have to the extent possible the views of the Deputy Commissioner on the subjects above set forth, or on others he deems pertinent, so as to be able to follow and appraise his application of the law to the evidence. See Wimmer v. Hoage, 67 App.D.C. 128, 129, 90 F.2d 373, 374; Del Vecchio v. Bowers, 62 App.D.C. 327, 67 F.2d 751;[9] United Fruit Co. v. Cardillo, D.C.S.D.N. Y., 104 F.Supp. 81. See, also, Industrial Commission of Colorado v. Wetz, 100 Colo. 161, 168, 66 P.2d 812, 815; Howard v. Monahan, D.C.S.D.Tex., 33 F.2d 220.[10]

■ Although unable to affirm, neither do we direct an award as in Friend v. Britton, —— U.S.App.D.C. ——, 220 F. 2d 820, Robinson v. Bradshaw, supra, and Fidelity & Casualty Co. of New York v. Burris, 61 App.D.C. 228, 230, 59 F.2d 1042, 1044. For, as we have sought to indicate, the appropriate procedure in the instant case is further consideration by the Deputy Commissioner, in the course of which he may receive additional testimony if in the exercise of a sound discretion he deems this appropriate.

Reversed and remanded to the District Court for remand to the Deputy Commissioner.

"A. Right after lunch he picked up and set the rail on the holes.

"Q. Who set the rails on the holes? A. Both of us. Where did you get the rail from? A. It was laying down there for us to work on.

"Q. How far was it from the holes? A. 5 feet.

"Q. And you grabbed one end and he grabbed the other? A. That is right.

"Q. And did what? A. Set it on the horses.

"Q. What did he do then? A. Checked it and knew how long it was, but we had to grind some of it off.

"Q. What happened then? A. We checked it up after we ground it and then picked it up and put it in the hole.

"Q. Who picked it up? A. Tommy and myself.

*            *

"Q. Who wedged it? A. I did.

"What was Mr. Vendemia doing? A. He had the plumbing rule on it, getting it for the plumbers on the rail. He wedged it and he checked it for plumbing.

*            *."

8. "To hasten death is to cause it." Avignone Freres, Inc., v. Cardillo, 73 App. D.C. 149, 150, 117 F.2d 385, 386; Friend v. Britton, —— U.S.App.D.C. ——, 220 F.2d 820.

9. For subsequent history, see Del Vecchio v. Bowers, 296 U.S. 280, 56 S.Ct. 190, 80 L.Ed. 229, reversing Bowers v. Hoage, 64 App.D.C. 226, 76 F.2d 996.

10. See, also, the following cases, none of which, however, arose under compensation statutes: Saginaw Broadcasting Co. v. Federal Communications Comm'n, 68 App.D.C. 282, 287–289, 96 F.2d 554, 559–561, certiorari denied sub nom. Gross v. Saginaw Broadcasting Co., 305 U.S. 613, 59 S.Ct. 72, 83 L.Ed. 391; and Tri-State Broadcasting Co. v. Federal Communications Comm'n, 68 App.D.C. 292, 96 F.2d 564.