Richard J. FURLONG

v.

Stephen O'HEARNE, Deputy Commissioner, Bureau of Employees' Compensation, Fourth Compensation District,

and

Maryland Shipbuilding and Drydock Co.

and

Maryland Casualty Company.

No. 3828.

United States District Court
D. Maryland, Admiralty Division.

Sept. 17, 1956.

Bernard G. Link, Baltimore, Md., for claimant.

Walter E. Black, Jr., U. S. Atty., and William F. Mosner, Asst. U. S. Atty., Baltimore, Md., for Deputy Commissioner.

Robert E. Coughlan, Jr., Baltimore, Md., for Maryland Shipbuilding & Drydock Co. and Maryland Cas. Co.

THOMSEN, Chief Judge.

Claimant's appeal from an order denying his claim presents the question whether he sustained an accidental injury within the meaning of 33 U.S.C.A. §§ 902(2), 903.

Much of the following statement is taken directly from the Deputy Commissioner's findings; the other facts are stated as favorably to the Deputy Commissioner's conclusion as is justified by the record considered as a whole.

In January, 1955, and for several years prior thereto, claimant, 42, was employed as a rigger by Maryland Shipbuilding and Drydock Company. He has a congenital condition in his low back, diagnosed as spina bifida with spondylolisthesis between the sacrum and the 5th lumbar vertebra. Spina bifida is a congenital malformation in which the spinal column is cleft at its lower portion, and the membranes of the spinal cord project as an elastic swelling from the gap thus formed. Spondylolisthesis is a forward displacement of a lumbar vertebra, especially on the sacrum, with consequent contraction of the pelvis. His condition caused him no back or leg pain or stiffness prior to the last week in January, 1955, but such a congenital condition may become symptomatic and disabling as the result of (a) trauma, (b) coughing and sneezing, or (c) spontaneously without apparent cause, in which case the symptoms would come on gradually.

During the week of 24 January 1955, while repairing the U. S. S. Tripoli, which was afloat in the Patapsco River, claimant had to lift several very heavy rotor pumps; while lifting these pumps claimant felt something in his back which he found it difficult to explain. He testified: "Well, in the course of lifting these things I felt I was straining myself and just couldn't make it. I tried to pick it up and just couldn't make it and I called for help and had some other boys come over and give me a hand to load them." He told a competent neurologist, to whom he was referred by his employer, that during the last week in January he noticed a low grade, nagging backache centered in the low back (indicating the lumbosacral region) which was constantly present; that this pain was mild in nature, but on 31 January, several days after its onset, the pain in this area became quite severe. The Deputy Commissioner found that "the claimant at first thought his back condition was due to the cold that he had; that on consulting a chiropractor on 31 January 1955, he gave a history of lifting some machinery during the week before and in lifting, this particular day, he felt something give at the base of his spine and immediately had pain in the area of the back and it had gradually built up," etc. Dr. Thompson, the chiropractor, took X-rays of the claimant's spine, gave him several treatments, and prescribed a low back support. On 31 January Dr. Thompson noted on a record "injured back lifting heavy metal parts", and on 7 February Dr. Thompson reported to the employer that the body of the 5th lumbar, as shown by his X-ray, had apparently slipped forward on the base of the sacrum. Dr. Ullrich, an orthopedic surgeon, however, testified that it was a pre-slip type of spondylolisthesis. Claimant worked 3–5 February, and has worked for short periods since, but has been disabled from working most of the time.

Dr. Lippman, who is in charge of the Orthopedic Department at the United States Public Health Service Hospital in Baltimore, testified: "I think that this man has these anomalies but I think he has had an aggravation due to the type of occupation he performs". The aggravation is in the bony part, rather than the muscular part. His final diagnosis was that claimant had this congenital anomaly of the vertebra, and "that he

had superimposed strain due to injury", i. e. trauma, which the doctor defined as including heavy lifting. On cross-examination by the attorney for the insurance carrier, Dr. Lippman testified that he did not think it possible that the complaint could have come on without any strain or accident.

Dr. Ullrich testified that such a back often remains asymptomatic until there is some strain. A sudden onset of symptoms can be caused by trauma, or by a cold, coughing and sneezing. It can come on gradually without any apparent cause. By "trauma", the doctor referred to lifting, as well as something unusual, a person catching himself off balance, any sudden shock to the muscles. He recommended a lumbosacral belt, physiotherapy, and an operation as a last resort.

There was no evidence that claimant had coughed or sneezed during the week of 24 January, and no evidence that the symptoms had come on gradually; rather, claimant's testimony and the histories he gave to the various doctors all indicate that he felt the pain after lifting the pumps, and that it grew worse during the week, while he continued with his regular work, which entailed heavy lifting.

The Deputy Commissioner stated "that the claimant is vague as to time of the occurrence and the description of symptoms at the time of the alleged accident". He was justified in making that statement; but it is evident from an examination of the record that claimant is inarticulate, and it is not easy to explain, months later, the exact nature of sensations in the lumbosacral region.

The Deputy Commissioner concluded that claimant "has failed to show he sustained accidental injury of a sudden, unusual and unexpected character, from strain or overexertion, arising out of and in the course of employment."

The Longshoremen's and Harbor Workers' Compensation Act uses the term "accidental injury", sec. 902(2), rather than the terms "accident" or "injury by accident" used in some other acts. State courts have divided on the question whether the term "accidental injury" implies accidental means or an accidental result. A minority requires proof of accidental means or of some unusual strain or condition in the course of the employment not naturally and ordinarily incident thereto. See, for example, Slacum v. Jolley, 153 Md. 343, at page 351, 138 A. 244, and Miskowiak v. Bethlehem Steel Co., 156 Md. 690, 145 A. 199. But the Fourth Circuit rejected that doctrine in Baltimore & O. R. Co. v. Clark, 59 F.2d 595, and held that heat prostration resulting from the conditions of employment is compensable under the Federal statute whether or not there was any unusual or extraordinary condition of the employment not naturally and ordinarily incident thereto. Speaking through Judge Parker, the Court said:

"Such an injury is accidental in that it is unforeseen and unexpected. If it results from the conditions under which the work is carried on, there is no reason why it should not be held compensable. In such case, it is one of the casualties of the business; and it is the purpose of the compensation statutes to place the burden of such casualties upon the business and not upon the unfortunate employee. Wheeling Corrugating Co. v. McManigal, 4 Cir., 41 F.2d 593, 595. Nor is it material that such injury would not have resulted but for the physical condition of the employee. His condition is to be deemed not the 'cause' of the injury but merely a 'condition' which enabled the 'cause' to become operative. See Mutual Life Ins. Co. v. Dodge, 4 Cir., 11 F.2d 486, 489, 59 A.L.R. 1290; New Amsterdam Casualty Co. v. Shields, 6 Cir., 155 F. 54, 56. It is well settled that the fact that an employee is in a weakened or diseased condition does not bar his right to recover under workmen's compensation acts for accidental injury, even though, but for such weakened or diseased condition, the injury would not have occurred. See notes 19 A.L.R. 95 and 28 A.L.R.

204 and cases cited." 59 F.2d at page 598.

Other Circuits have made similar rulings. In Southern Stevedoring Co. v. Henderson, 5 Cir., 175 F.2d 863, the court said:

"* * * If the workman overstrains his powers, slight though they be, or if something goes wrong within the human frame, such as the straining of a muscle or the rupture of a blood vessel, an accident arises out of the employment when the required exertion producing the injury is too great for the man undertaking the work; and the source of the force producing the injury need not be external. This was held in an English case, Clover, Clayton & Co. v. Hughes, L. R. Cases 1910, page 242, 3 B.W.C.C. 275, where on post mortem it was found that the employee had a very large aneurism of the aorta which might have burst while the man was asleep but which in fact ruptured while, with slight effort, he was tightening a nut with a spanner wrench. The principle announced in the case just mentioned was cited with approval in Hoage v. Employers' Liability Assurance Corporation, 62 App.D.C. 77, 64 F.2d 715, certiorari denied Employers' Liability Assurance Corporation v. Kerper, 290 U.S. 637, 54 S.Ct. 54, 78 L.Ed. 554; Brodtmann v. Zurich General Accident & Liability Ins. Co., 5 Cir., 90 F.2d 1." 175 F.2d at page 866.

"* * * If he injured himself inwardly by straining his heart or rupturing an artery, the unexpected event, the fortuitous circumstance, the unintentional result, and the legal effect, are the same as if the injury had been external in character. This is true even though there was no strain or exertion out of the ordinary when the injury occurred. It is sufficient if the particular strain was too great for the individual employee in his singular condition. * * * The fact that the result would have been expected by a physician if he had diagnosed the case is nothing to the purpose. An occurrence is unexpected if it is not expected by the man who suffers it." 175 F.2d at pages 867, 868.

In Commercial Casualty Ins. Co. v. Hoage, 64 App.D.C. 158, 75 F.2d 677, certiorari denied 295 U.S. 733, 55 S.Ct. 645, 79 L.Ed. 1682, a grocery clerk, who had an enlarged heart, suffered aortic regurgitation while handling sacks of potatoes. Speaking through Judge Groner, the court said, 75 F.2d at page 678:

"* * * It has been held a number of times, and we think correctly, that an accidental injury may occur notwithstanding the injured is then engaged in his usual and ordinary work, and likewise that the injury need not be external. It is enough if something unexpectedly goes wrong within the human frame. * * * Hence it is that 'accidental injury' includes any injury which is unexpected or not designed, and just as much includes injury sustained by an employee subject to physical infirmities as injury to one who is strong and robust."

In Pacific Employers' Ins. Co. v. Pillsbury, 9 Cir., 61 F.2d 101, where a stevedore's illness, which terminated in his death, was brought on by strain due to heavy work, it was held that the injury and death were accidental within the meaning of the Longshoremen's Act. In Hoage v. Royal Indemnity Co., 67 App. D.C. 142, 90 F.2d 387, it was held that a spasm of the heart muscle due to angina pectoris resulting from overwork and physical and mental strain, superimposed upon a previous condition of arteriosclerosis, was an accidental injury within the meaning of the Act.

Most courts recognize these principles in cases where routine exertion leads to something actually breaking, herniating or "letting go", as in cases of cerebral hemorrhage, arterial or blood vessel rupture, herniated intervertebral disc, etc.

Larson, Workmen's Compensation Law, § 38.20. A narrower majority, including the Federal courts, accept usual exertion as leading to accidental injury when it involves coronary thrombosis, myocarditis, dilatation of the heart, arteriosclerosis, arthritis, encephalitis, bursitis, back or muscle strain, appendicitis, and the like. Larson, op. cit., § 38.30. Such a case was Southern Stevedoring Co. v. Henderson, supra, where the claimant sustained a coronary thrombosis from climbing a ladder after a heart attack. In Harbor Marine Contracting Co. v. Lowe, D.C.S.D.N.Y., 61 F.Supp. 964, affirmed 2 Cir., 152 F.2d 845, compensation was allowed for death due to coronary sclerosis from sweeping soot and carrying it away in fifteen-pound bags. And in Great Atlantic & Pacific Tea Co. v. Cardillo, 75 U.S.App.D.C. 342, 127 F.2d 334, compensation was allowed for the aggravation of an arthritic condition by lifting a five-gallon can of kerosene. See also Lacomastic Corp. v. Parker, D.C. Md., 54 F.Supp. 138; Keller v. Anderson Sand & Gravel Co., 292 Mich. 625, 291 N.W. 32; Pioli v. Crouse-Hinds Co., 281 App.Div. 737, 117 N.Y.S.2d 734.

In the case at bar, if there was an "injury" resulting from the heavy lifting, it was certainly unforeseen and unexpected, and therefore accidental. It did not have to be any more sudden than it was, in order to be compensable. As we have seen, the various Circuits have held muscle strain, coronary thrombosis, and aggravation of an arthritic condition to be "injuries" under the Act. Those decisions are in line with leading state court cases.

One of the best definitions of "injury" was provided in an early Massachusetts opinion:

> "In common speech the word 'injury,' as applied to a personal injury to a human being, includes whatever lesion or change in any part of the system produces harm or pain or a lessened facility of the natural use of any bodily activity or capability." Burn's Case, 218 Mass. 8, 12, 105 N.E. 601, 603.

So, if a congenital condition of spina bifida and spondylolisthesis, which has been asymptomatic and has not prevented the employee from working, is aggravated by the strain of heavy lifting, so that it becomes painful and prevents the employee from working, there has been an injury. Something has unexpectedly gone "'wrong within the human frame,'" Southern Stevedoring Co. v. Henderson, supra; there has been a "change in any part of the system" which has produced "harm or pain or a lessened facility of the natural use of any bodily activity or capability", Burn's Case, supra. A pre-existent but dormant condition has been "aroused * * * into disastrous activity." Old Dominion Stevedoring Corp. v. O'Hearne, 4 Cir., 218 F.2d 651, 653.

When the record in the case at bar is considered as a whole, as it must be under O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483, there is no basis for any finding except that the congenital condition was aggravated by the strain of the heavy lifting, so that it became disabling. The suggestion that the aggravation may have been due to a cold is mere conjecture. There is no evidence that the claimant was coughing or sneezing during the week of 24 January 1955, and no doctor testified that in his opinion the aggravation was due to a cold. Conjecture and suspicion are not enough, N. L. R. B. v. A. S. Abell Co., 4 Cir., 97 F.2d 951; Cupples Co. Manufacturers v. N. L. R. B., 8 Cir., 106 F.2d 100, 105. Nor is there any substantial evidence that the condition came on gradually, without any apparent cause. No doctor testified that in his opinion it did. "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456. In the case at bar the evidence is uncontradicted that the pain came on immediately or shortly after the claimant had lifted the heavy pumps. The fact that he did not immediately attribute it to

that cause is not sufficient to bar his claim. Nor is the fact that he was "vague as to the exact time of the occurrence and the description of the symptoms". He fixed the time within a day or two, when he handled the pumps. He described his symptoms to Dr. Thompson within a week. Dr. Thompson reported them to the employer, and the claimant described them again to the employer's neurologist, who examined him shortly thereafter.

The presumption in sec. 920(a) does not relieve the claimant of the necessity of proving an injury. Eschbach v. Contractors, Pacific Naval Air Bases, 7 Cir., 181 F.2d 860, 864; Larson, op. cit. sec. 10.33, 80.33. See also Del Vecchio v. Bowers, 296 U.S. 280, 286, 56 S.Ct. 190, 80 L.Ed. 229. But I find that there is no substantial evidence supporting the decision of the Deputy Commissioner disallowing the claim. His order must be reversed, and the case remanded to him for the passage of an order awarding compensation to the claimant.