**LAKE CENTRAL AIRLINES, Inc.,**
**Petitioner,**

**v.**

**CIVIL AERONAUTICS BOARD,**
**Respondent,**
**American Airlines, Inc., Intervenor,**
**North Central Airlines, Inc.,**
**Intervenor,**
**City of Kalamazoo, Michigan,**
**Intervenor.**

**No. 12665.**

United States Court of Appeals
District of Columbia Circuit.

Argued May 4, 1956.

Decided Nov. 8, 1956.

Mr. James L. Highsaw, Jr., Washington, D. C., with whom Mr. Albert F. Grisard, Washington, D. C., was on the brief, for petitioner.

Mr. Henry W. Switkay, Atty., Civil Aeronautics Board, for respondent.

Messrs. Stanley N. Barnes, Asst. Atty. Gen., at time brief was filed, Franklin M. Stone, Gen. Counsel, Civil Aeronautics Board, John H. Wanner, Associate Gen. Counsel, Civil Aeronautics Board, O. D. Ozment, Chief, Litigation and Research Division, Civil Aeronautics Board, Gerald F. Krassa, Atty., Civil Aeronautics Board, and Daniel M. Friedman, Atty., Dept. of Justice, were on the brief for respondent.

Mr. Charles H. Weston, Atty., Dept. of Justice, also entered an appearance for respondent.

Messrs. Ernest W. Jennes and John W. Douglas, Washington, D. C., entered appearances for intervenor, American Airlines, Inc.

Mr. A. L. Wheeler, Washington, D. C., with whom Mr. Gregory Hankin, Washington, D. C., was on the brief, for intervenor North Central Airlines, Inc.

Mr. Charles S. Rhyne, Washington, D. C., with whom Mr. J. Parker Connor, Washington, D. C., was on the brief, for intervenor City of Kalamazoo, Michigan.

Before WILBUR K. MILLER, FAHY and DANAHER, Circuit Judges.

FAHY, Circuit Judge.

Lake Central Airlines, Inc., pursuant to 52 Stat. 1024 (1938), as amended, 49 U.S.C. § 646(a) (1952), 49 U.S.C.A. § 646(a), and 60 Stat. 243 (1946), 5 U.S.C. § 1009(a) (1952), 5 U.S.C.A. § 1009(a), petitions for review of orders of the Civil Aeronautics Board dated February 28 and April 22 and 27, 1955. North Central Airlines, Inc., American Airlines, Inc., and the City of Kalamazoo have intervened in support of the Board.

In a consolidated proceeding the Board, with one member dissenting, determined by its order of February 28, 1955 that public convenience and necessity required the temporary suspension of American Airlines' trunkline service between Chicago and Detroit via South Bend, Kalamazoo and Ann Arbor, designated as Route 7, and that North Central Airlines, Inc., in preference both to Ozark Airlines, Inc., and to petitioner Lake Central, should be granted a temporary authorization as local service carrier over the route. The Board thus accepted in substance the report of its Examiner.

Lake Central petitioned the Board for reconsideration and for reopening of the record. In event of denial of this petition Lake Central asked the Board to stay its order of February 28 for seven days after Lake Central's receipt of the denial. The Board denied the petition in a supplemental opinion and order of April 22, 1955.

Three days thereafter Lake Central filed another petition. This set forth that Congress had almost finished favorable action on a bill to make permanent the temporary authorizations held by local service carriers, the effect of which in

the present case would be to make permanent both the suspension of American's authorization to operate Route 7 and the grant of authorization to North Central.[1] Lake Central asked for a stay and for a reopening of the record to receive evidence on the requirements of public convenience and necessity for the permanent substitution of local service and the selection of the local carrier to render it. The Board denied this petition by its order of April 27, 1955.

Lake Central[2] then petitioned this Court for a stay pending judicial review. This we denied April 29, 1955, with the understanding that if enacted the new law would not automatically entitle North Central to a permanent authorization pending judicial review. The case is now before us on the merits.

In its brief petitioner's main contentions are that the findings upon which rests the grant of the application of North Central to operate Route 7 are not supported by substantial evidence, and that even if so supported they do not in turn support the conclusion that public convenience and necessity required the selection of that carrier. The challenged findings are three:

1. That Route 7 would integrate into North Central's existing system better than into that of Lake Central;

2. That Route 7 would be operated by North Central with less cost to the carrier and to the Federal Government than if operated by Lake Central;

3. That North Central would more promptly than Lake Central inaugurate local air service over the route.

As to *integration of routes* the Board differed with its Bureau of Air Transportation and agreed with its Examiner. The problem of the Board on this aspect of the case was not so much one of resolving factual issues as of exercising its judgment. In considering the interrelated geographical situations of Lake Central, North Central and Route 7, reasonable men might conclude that either carrier could satisfactorily integrate Route 7 into its existing system. Which could better do so no doubt is arguable; but certainly the finding of the Board favoring North Central is not without substantial support in the record considered as a whole. Lake Central challenges the finding as based in part upon the mistaken conclusion that North Central would be in a position to offer more single plane service and generate more traffic between intermediate points on Route 7 and cities west of Lake Michigan it now serves than Lake Central could offer between those points and cities on its existing route. The Board made this appraisal by considering numerous factors indicating the likelihood of such service by North Central, and its importance. Our own consideration of these factors leaves us with no solid basis for substituting a different judgment for that of the Board.

As to *costs of service* there was a deal of competing evidence. One might characterize this branch of the case as a contest between experts who start from different premises and travel towards different conclusions; the economists in the Board's Bureau of Air Operations reached results favorable to Lake Central; the Examiner, taking into consideration other economic factors and the better prospects of North Central to develop increased traffic and revenue, thought that carrier more likely to have profitable operations, with less cost to the Government in the form of a subsidy if any were required. For this and other enumerated reasons the Board rejected the views of the Bureau and made findings favorable to North Central. Though these may not be correct in the eyes of some experts we cannot ourselves say that they are without substantial support in the record.

As to *promptness in inaugurating service* the finding favorable to North Central is supported *inter alia* by evidence of its greater financial strength,

1. This bill was enacted into law May 19, 1955. See note 4 infra.

2. Ozark has not petitioned the Court for review of the award to North Central.

better credit situation, and numbers of aircraft available. It is not a sufficient answer for Lake Central in this or in other respects to be able to say truthfully that it too meets acceptable standards. We do not construe the decision of the Board to mean that Lake Central could not inaugurate the service with reasonable promptness. The Board found both Lake Central and North Central fit, willing and able to render the proposed local service over Route 7. But we must leave the choice of carrier to the judgment of the Board where, as here, it is a reasonable one, rests upon findings which are supported by adequate evidence, and the proceedings are free of significant procedural error. See Charleston & Western Carolina Ry. Co. v. Federal Power Commission, 98 U.S.App.D.C. 241, 234 F.2d 62, 64.

Lake Central contends that the basic findings require more detailed subsidiary findings in order validly to support the conclusion that public convenience and necessity called for the selection of North Central. See American Broadcasting Co. v. Federal Communications Commission, 85 U.S.App.D.C. 343, 179 F.2d 437; Sanders Bros. Radio Station v. Federal Communications Commission, 70 App.D.C. 297, 106 F.2d 321. In view of the analyses contained in the Board's opinion, coupled with its adoption in general of the findings of the Examiner, we are unable to agree. Each primary ground advanced for the award to North Central was factually analyzed and discussed in sufficient detail to enable the court competently to review it with comprehension of the Board's basis for its action. There is no requirement in this case of specific subsidiary findings other than the basic findings which support the ultimate conclusion found by the Board in terms of the statute. Such basic findings were made with sufficient elaboration to enable the court to relate the evidence to them.[3]

The remaining question has to do with the Board's refusals to reopen the record. As we have seen Lake Central first moved for reopening April 7, 1955, at a time when its petition for reconsideration of the order of February 28, 1955, was pending. It filed a second motion to reopen April 25, 1955, revolving around the pending federal legislation. This legislation was introduced in the House of Representatives January 13, 1955, passed the House April 19, 1955, and passed the Senate the following day. It became law May 19, 1955, and is known as section 401(e) (3) of the Civil Aeronautics Act,[4] 69 Stat. 49, 49 U.S.C. § 481(e) (3) (Supp. III, 1955), 49 U.S.

3. Futhermore, the problem was largely one of expert judgment and for this reason, also, the situation is to be contrasted with those presented in, for example, Vendemia v. Cristaldi, 95 U.S.App.D.C. 230, 221 F.2d 103, and Capital Transit Co. v. Public Utilities Commission, 93 U.S.App.D.C. 194, 200, 213 F.2d 176, 182, certiorari denied 348 U.S. 816, 75 S. Ct. 25, 99 L.Ed. 643.

4. The text of this amendment to the Civil Aeronautics Act is as follows:

"'If any applicant who makes application for a certificate within one hundred and twenty days after the date of enactment of this paragraph shall show that from January 1, 1953 to the date of its application, it or its predecessor in interest, was an air carrier furnishing, within the continental limits of the United States, local or feeder service consisting of the carriage of persons, property, and mail, under a temporary certificate of public convenience and necessity issued by the Civil Aeronautics Board, continuously operating as such (except as to interruptions of service over which the applicant or its predecessors in interest have no control) the Board upon proof of such fact only, shall, unless the service rendered by such applicant during the period since its last certification has been inadequate and inefficient, issue a certificate or certificates of unlimited duration, authorizing such applicant to engage in air transportation between the terminal and intermediate points within the continental limits of the United States between which it or its predecessor, so continuously operated between the date of enactment of this paragraph and the date of its application: *Provided*, That the Board in issuing the certificate is empowered to limit the duration of the certificate as to not over one-half of the intermediate points named therein, which points it

C.A. § 481(e)(3). Its effect is to make permanent the certificate awarded to North Central over Route 7 notwithstanding the proceedings initiated before the Board contemplated authorization for only a temporary period. Lake Central points out that the evidence considered in the Board proceedings was directed to a temporary authorization. It urges that it was an abuse of discretion for the Board not to reopen for additional evidence when it became apparent during the proceedings that legislation which would have the effect stated was progressing toward enactment. The Board points out that the legislation was supported by the Conference of Local Airlines, of which Lake Central appears to be a member,[5] and was advocated to enable such carriers to have permanent status without the necessity of periodic renewal proceedings incident to certificates for temporary periods.[6] No provision for new hearings is made by the legislation itself. Implicit therein is the legislative supposition that a local carrier to which the Board awarded a temporary certificate in the public interest should be deemed qualified for a permanent certificate without more, except as therein specified. Since no additional evidence is required to accomplish this transition no abuse of discretion flowed from a refusal to reopen merely because of the pendency of the legislation. No additional criteria were being established; only a different effect would attach to the outcome, whichever of competing applicants was favored. Furthermore, in neither of its motions to reopen did Lake Central present any data calculated to change the result.[7]

Affirmed.

finds have generated insufficient traffic to warrant a finding that the public convenience and necessity requires permanent certification at such time.' "

5. Hearings before Senate Commerce Committee, 83rd Cong., 2d Sess., on S. 3759, H.R. 8898 and Amendments "I" and "J" to S. 2647 (1954) 5, 117.

6. See Senate Report No. 124 on S. 651, 84th Cong., 1st Sess., 1955 U.S. Code Cong. and Ad. News 1902, 1904–5; House Report No. 265 on H. R. 2225, 84 Cong., 1st Sess., op. cit. at 1910.

7. We have not overlooked the Board's error in its original opinion in saying that Northwest Airlines handled Lake Central's operations in Chicago. In its supplemental opinion of April 22, 1955, the Board conceded that this statement in its opinion of February 28, 1955, was incorrect but went on to say that it did not feel the correction materially affected its finding that North Central's existing operations afforded an advantage over Lake Central in ability to inaugurate service promptly.